1   MICHAEL J. HADDAD (State Bar No. 189114)
2   JULIA SHERWIN (State Bar No. 189268)
    GENEVIEVE K. GUERTIN (State Bar No. 262479)
3   T. KENNEDY HELM (State Bar No. 282319)
    HADDAD & SHERWIN LLP
4   505 Seventeenth Street
    Oakland, California  94612
5   Telephone: (510) 452-5500
    Facsimile:   (510) 452-5510
6

7   Attorneys for Plaintiffs
    KAYLEIGH SLUSHER, Dec., JASON SLUSHER,
8   ROBIN SLUSHER and BENNY SLUSHER

9                    **UNITED STATES DISTRICT COURT**

10                  **NORTHERN DISTRICT OF CALIFORNIA**

11

12  KAYLEIGH SLUSHER, Deceased, THROUGH HER      )
    SUCCESSOR IN INTEREST JASON SLUSHER;         )   No:
13  JASON SLUSHER, Individually; ROBIN SLUSHER,  )
    Individually; and BENNY SLUSHER, Individually,  )   Hon.
14                                               )
15                Plaintiffs,                    )
                                                 )   **COMPLAINT FOR**
16  vs.                                          )   **DAMAGES, DECLARATORY,**
                                                 )   **AND INJUNCTIVE RELIEF,**
17  CITY OF NAPA, a public entity; NAPA POLICE   )   **AND DEMAND FOR JURY**
    OFFICER GARRETT WADE, Individually; NAPA     )   **TRIAL**
18  POLICE OFFICER DEGUILIO, Individually; NAPA  )
    CHIEF OF POLICE RICHARD MELTON,              )
19  Individually and in his Official Capacity; COUNTY OF  )
    NAPA, a public entity; NAPA COUNTY CHILD     )
20  WELFARE SERVICES SOCIAL WORKER NANCY         )
    LEFLER, Individually; NAPA COUNTY CHILD      )
21  WELFARE SERVICES WORKER ROCIO DIAZ-          )
    LARA, Individually; and DOES 1–50, Jointly and  )
22  Severally                                    )
                                                 )
23                                               )
                  Defendants.                    )
24                                               )
                                                 )
25 _____ )

26

27

28

Plaintiffs, by and through their attorneys, HADDAD & SHERWIN LLP, for their Complaint against Defendants, state as follows:

### JURISDICTION AND INTRADISTRICT ASSIGNMENT TO SAN JOSE

1.      This is a civil rights action arising from Defendants' violation of mandatory duties to investigate and/or report child abuse and/or neglect, and to refrain from creating danger and increasing Plaintiffs' risk of harm, which resulted in the death of Plaintiff KAYLEIGH SLUSHER, Deceased, on or about January 30, 2014, in the City of Napa, Napa County, California.  This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988; and the First and Fourteenth Amendments to the United States Constitution, as well as the laws and Constitution of the State of California. Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1343(a)(3) and (4), and the aforementioned statutory and constitutional provisions.  Plaintiffs further invoke the supplemental jurisdiction of this Court pursuant to 28 U.S.C. §1367 to hear and decide claims arising under state law.

### INTRADISTRICT ASSIGNMENT

2.      A substantial part of the events and/or omissions complained of herein occurred in the City of Napa, Napa County, California, and this action is properly assigned to the San Francisco or Oakland Divisions of the United States District Court for the Northern District of California, pursuant to Civil Local Rule 3-2(e).

### PARTIES AND PROCEDURE

3.      Plaintiff JASON SLUSHER is the father of decedent, KAYLEIGH SLUSHER. Plaintiff JASON SLUSHER brings these claims individually and as a Successor in Interest for his daughter and only child, Kayleigh Slusher, Deceased, pursuant to California Code of Civil Procedure sections 377.20 et seq. and 377.60 et seq. which provide for survival and wrongful death actions.  These claims are also brought individually and on behalf of Kayleigh Slusher, Deceased,

on the basis of the 42 USC §§ 1983 and 1988, the United States Constitution, and federal and state civil rights law.  JASON SLUSHER is a resident of the State of California.  At all times, Plaintiff JASON SLUSHER adored his daughter KAYLEIGH and had a close and loving relationship with her.

4.     Plaintiff ROBIN SLUSHER is the grandmother of Decedent KAYLEIGH SLUSHER and a resident of the State of California.  Plaintiff ROBIN SLUSHER brings these claims individually.  Plaintiff ROBIN SLUSHER had the closest possible healthy relationship with her granddaughter, KAYLEIGH SLUSHER, that a grandmother could have.  For substantial periods of KAYLEIGH SLUSHER'S life, ROBIN and BENNY SLUSHER provided for KAYLEIGH'S financial, emotional, and physical support, including while KAYLEIGH lived in ROBIN and BENNY SLUSHER'S home, and afterward.  ROBIN and BENNY SLUSHER had a long-standing custodial relationship with KAYLEIGH SLUSHER such that they constituted a family unit. Besides Plaintiffs JASON SLUSHER, ROBIN SLUSHER, and BENNY SLUSHER, no other person had a closer, more intimate, healthy, familial relationship with KAYLEIGH SLUSHER.

5.     Plaintiff BENNY SLUSHER is the grandfather of Decedent KAYLEIGH SLUSHER and a resident of the State of California.  Plaintiff BENNY SLUSHER brings these claims individually.  Plaintiff BENNY SLUSHER had the closest possible healthy relationship with his granddaughter, KAYLEIGH SLUSHER, that a grandfather could have.  For substantial periods of KAYLEIGH SLUSHER'S life, ROBIN and BENNY SLUSHER provided for KAYLEIGH'S financial, emotional, and physical support, including while KAYLEIGH lived in ROBIN and BENNY SLUSHER'S home, and afterward.  ROBIN and BENNY SLUSHER had a long-standing custodial relationship with KAYLEIGH SLUSHER such that they constituted a family unit. Besides Plaintiffs JASON SLUSHER, ROBIN SLUSHER, and BENNY SLUSHER, no other person had a closer, more intimate, healthy, familial relationship with KAYLEIGH SLUSHER.

6.      Defendant CITY OF NAPA is a public entity established by the laws and Constitution of the State of California, and owns, operates, manages, directs, and controls the Napa Police Department ("NPD") which employs other defendants in this action.

7.      Defendant NAPA POLICE OFFICER GARRETT WADE ("WADE") at all material times was employed as a law enforcement officer by NPD, and was acting within the course and scope of that employment.  Defendant WADE is being sued in his individual capacity.

8.      Defendant NAPA POLICE OFFICER DEGUILIO ("DEGUILIO") at all material times was employed as a law enforcement officer by NPD, and was acting within the course and scope of that employment.  Defendant DEGUILIO is being sued in his individual capacity

9.      Defendant DOE Police Officers ("Doe Police Officers") at all material times were employed as a law enforcement officers by Defendant City of Napa, and were acting within the course and scope of that employment.  Defendant Doe Police Officers are being sued in their individual capacities.

10.     Defendant Chief of Police RICHARD MELTON ("Melton") at all material times was employed as Chief of Police by Defendant City of Napa, and was acting within the course and scope of that employment.  As Chief of Police, Defendant Melton was a policy-making official for the City of Napa with the power to make official and final policy for the Napa Police Department.  Defendant Melton is being sued in his individual and official capacities.

11.     Defendant COUNTY OF NAPA is a public entity established by the laws and Constitution of the State of California, and owns, operates, manages, directs, and controls Napa County Child Welfare Services ("CWS") which employs other defendants in this action.

12.     Defendant CWS worker NANCY LEFLER-PANELA at all material times was employed as a child welfare services social worker by CWS and was acting within the course and scope of that employment.  Defendant LEFNER is being sued in her individual capacity.

13.     Defendant CWS worker ROCIO DIAZ-LARA at all material times was employed as a child welfare services social worker by CWS and was acting within the course and scope of that employment.  Defendant DIAZ-LARA is being sued in her individual capacity.

14.     Defendant DOE CWS Workers ("Doe CWS Workers") at all material times were employed as Child Welfare Services workers by Defendant County of Napa, and were acting within the course and scope of that employment.  Doe Defendant CWS Workers are being sued in their individual capacities.

15.     The true names and capacities of other Defendants sued as DOES 1–50 ("DOE DEFENDANTS"), including Doe Police Officers and Doe CWS Workers, are unknown to Plaintiffs, who therefore sue these Defendants by such fictitious names, and Plaintiffs will seek leave to amend this complaint to show their true names and capacities when the same are ascertained.  Each DOE DEFENDANT was an employee/agent of either the CITY OF NAPA or the COUNTY OF NAPA, and at all material times acted within the course and scope of that relationship.  Plaintiffs are informed and believe and thereon allege that each of the Defendants sued herein was negligently, wrongfully, and otherwise responsible in some manner for the events and happenings as hereinafter described, and proximately caused injuries and damages to Plaintiffs. Further, one or more DOE DEFENDANTS was at all material times responsible for the hiring, training, supervision, and discipline of other defendants, including DOE DEFENDANTS.

16.     Plaintiffs are informed and believe, and thereon allege, that each of the Defendants was at all material times an agent, servant, employee, partner, joint venturer, co-conspirator, and/or alter ego of the remaining Defendants, and in doing the things herein alleged, was acting within the course and scope of that relationship.  Plaintiffs are further informed and believe, and thereon allege, that each of the Defendants herein gave consent, aid, and assistance to each of the remaining

Defendants, and ratified and/or authorized the acts or omissions of each Defendant as alleged herein, except as may be hereinafter otherwise specifically alleged.

17.     At all material times, each Defendant was jointly engaged in tortious activity, and an integral participant in the conduct described herein, including the violation of mandatory duties to investigate and/or report child abuse and/or neglect, and the increase of Plaintiffs' risk, resulting in the deprivation of Plaintiffs' constitutional rights and other harm.

18.     At all material times, each Defendant acted under color of the laws, statutes, ordinances, and regulations of the State of California and also of the CITY OF NAPA, and/or COUNTY OF NAPA.

19.     The acts and omissions of all Defendants as set forth herein were at all material times pursuant to the actual customs, policies, practices and procedures of the Defendants CITY OF NAPA and/or COUNTY OF NAPA.

20.     Plaintiffs bring these claims as Private Attorneys General, to vindicate not only their own rights but others' civil rights of great importance.

21.     This complaint may be pled in the alternative pursuant to Federal Rule of Civil Procedure 8(d).

## GENERAL ALLEGATIONS

22.     Plaintiffs reallege each and every paragraph in this complaint as if fully set forth here.

23.     On or about January 30, 2014, KAYLEIGH SLUSHER was murdered in her home, on information and belief, by her mother's boyfriend Ryan Scott Warner and/or her mother, Sara Krueger, at 2060 Wilkins Avenue, Apt. 7, in the City of Napa, County of Napa, California. KAYLEIGH was three years old.  At this time, Plaintiffs are unaware of details concerning the exact circumstances and manner of Kayleigh Slusher's homicide, because the Napa Police

Department has not provided such information in response to Plaintiffs' lawful requests for such information.

24.     At all relevant times herein, Decedent KAYLEIGH SLUSHER was a minor and was a resident of the County of Napa and the City of Napa.  On information and belief, KAYLEIGH SLUSHER had been a client of County of Napa CWS from approximately October 2010 until approximately April 2012.

25.     Prior to Kayleigh's death, PLAINTIFF ROBIN SLUSHER and others informed Defendant WADE and/or DOE NPD Officers on multiple occasions that Kayleigh was suffering abuse, neglect and was in immediate physical danger in her home due to the conduct, crimes, and activities of Mr. Warner and Ms. Kreuger, including but not limited to abuse of unlawful controlled substances.

26.     KAYLEIGH SLUSHER was born on May 3, 2010, Plaintiff ROBIN SLUSHER'S birthday.

27.     KAYLEIGH SLUSHER and her mother Sara Krueger, lived with KAYLEIGH'S grandparents, Plaintiffs ROBIN and BENNY SLUSHER, for over a year.  In addition, when KAYLEIGH moved from ROBIN and BENNY SLUSHER'S home into an apartment with her mother, Sara Krueger, Plaintiffs ROBIN and BENNY SLUSHER paid for Ms. Krueger's rent and telephone expenses for several months so that KAYLEIGH could have a safe place to live and contact with her family.

28.     In addition, throughout KAYLEIGH'S life, Plaintiffs ROBIN and BENNY SLUSHER, in addition to JASON SLUSHER, paid for Kayleigh's clothing, toys, material needs, medicine, and bought food for the household in which KAYLEIGH lived, including when KAYLEIGH and Ms. Krueger lived separately from ROBIN and BENNY SLUSHER.

29.     In addition, ROBIN and BENNY SLUSHER frequently had custody of KAYLEIGH for overnight and weekend visits, and frequently had her with them during the day, even when KAYLEIGH did not live full-time in the SLUSHERS' house.  The parties lived near each other, in the City of Napa, and ROBIN and BENNY SLUSHER saw KAYLEIGH regularly.

30.     In or around October 2013, Ms. Krueger began denying ROBIN and BENNY SLUSHER their usual access to, and contacts with, their granddaughter KAYLEIGH.  During this time, Plaintiff JASON SLUSHER was in prison for a crime unrelated to his relationship with KAYLEIGH SLUSHER, and he was not able to protect his daughter.

31.     During this time, Plaintiffs are informed and believe and thereon allege that Ms. Krueger was using illegal drugs and had moved Ryan Warner, who was also using illegal drugs and had a criminal history and a warrant for his arrest, into her home, thereby endangering the life and safety of KAYLEIGH SLUSHER.  Despite repeated attempts by Plaintiff ROBIN SLUSHER to see her granddaughter, Ms. Krueger repeatedly refused ROBIN access to KAYLEIGH for a matter of months.

32.     On or about January 23, 2014, Plaintiff ROBIN SLUSHER contacted NPD to request a welfare check on KAYLEIGH.  ROBIN SLUSHER called Defendant NPD to inform the police that KAYLEIGH may be suffering severe abuse, neglect, was in immediate physical danger, and to request police intervention to save KAYLEIGH.  MS. SLUSHER called anonymously because she did not want Ms. Krueger to learn she had called the police and preclude her from seeing KAYLEIGH.

33.     MS. SLUSHER informed Defendant NPD that KAYLEIGH was living in a dangerous household with "Ryan," whose last name she did not know, but who had a warrant for his arrest.  MS. SLUSHER informed Defendant NPD that Mr. Warner and Ms. Krueger were using

illegal drugs such as "crank" (methamphetamine) in KAYLEIGH'S home, and she was worried about whether or not KAYLEIGH was being given enough food and for KAYLEIGH'S safety.

34.     On or about January 23, 2015, around 6:10 p.m., Defendant WADE was dispatched to go to 2060 Wilkins Avenue, Apt. 7, for a warrant arrest.  On information and belief, Defendant WADE was advised that a man who lived there (Mr. Warner), had an outstanding warrant for his arrest.  On information and belief, Defendant WADE was also advised that a small child of three or four years old, Kayleigh, was in immediate physical danger due to Mr. Warner's and Ms. Kreuger's illicit drug use in the home at 2060 Wilkins Avenue, Apt. 7, due to Mr. Warner's and Ms. Kreuger's failure to provide food to Kayleigh, due to drug users coming in and out of the home at all hours, and due to possible physical violence against Kayleigh.  On information and belief, Defendant WADE was also advised that Mr. Warner stays inside the home with Kayleigh all the time, smokes all the time, uses "Crank," and he might be armed.

35.     Rather than perform a welfare check or any investigation into Kayleigh's safety and wellbeing, Plaintiffs are informed and believe and thereon allege that Defendant WADE decided not to go to the house where Kayleigh lived, not to investigate further, not to report suspected child abuse or neglect, not to seek further advice, assistance, or backup, not to serve any warrant there, and not to arrest any fugitive who may be living with Kayleigh and using drugs around her, and instead Defendant WADE cleared the call.  On information and belief, Defendant WADE chose not to investigate the report of child abuse and/or neglect in Kayleigh's home, because he determined that the environment in which Kayleigh lived was not safe for him or his partner to go there.

36.     At all relevant times, Defendant WADE was a Mandated Reporter under the California Child Abuse and Neglect Reporting Act ("CANRA"), including California Penal Code §11165.7.  Despite the fact that Defendant WADE knew, had reason to know and/or reasonably suspected that Kayleigh was suffering child abuse and/or neglect, Defendant WADE failed to

investigate and/or report the abuse and neglect as required by California Penal Code §§ 11164 *et seq*, 11165.9, and 11166.  Defendant WADE never made any report of child abuse and/or neglect in relation to Kayleigh to Napa County CWS or any other authority.

37.     On or about January 27, 2014, Plaintiff ROBIN SLUSHER contacted Napa County CWS by phone on more than one occasion and reported to Defendant CWS Workers DIAZ-LARA and LEFLER-PANELA that there had been a CWS case open for KAYLEIGH at some previous time, and that Ms. Krueger and her boyfriend were using drugs, which Ms. Slusher believed to be crank or crack, in the home.  ROBIN SLUSHER further informed Defendants DIAZ-LARA and LEFLER-PANELA that the drugs were accessible to KAYLEIGH, that Ms. Krueger and her boyfriend were intentionally depriving KAYLEIGH of food, that KAYLEIGH had lost weight, there was a lot of traffic in and out of the home, and there was a warrant for the arrest of Ms. Krueger's boyfriend.

38.     Shortly thereafter, Defendant LEFLER-PANELA called ROBIN SLUSHER back and said there was nothing CWS could do, and told Ms. Slusher she could call the police instead.

39.     At all relevant times Defendants LEFLER-PANELA and DIAZ-LARA were mandated reporters, including under California Penal Code § 11165.7.

40.     Defendants LEFLER-PANELA and DIAZ-LARA had the mandatory duties to respond, investigate and/or report the abuse and/or severe neglect under California law, including California Penal Code §§ 11165.9 and 11166, California Welfare and Institutions Code §§ 328, 10553, 10554, 16501, 16504, and California Department of Social Services Child Welfare Services Regulations §§ 31-100, 31-101, 31-105, 31-110, 31-115, 31-120, 31-125, 31-130, and 31-501.  These mandatory duties include, but are not limited to:

       a)     The duty to report suspected child abuse or neglect to the police or sheriff's department (P.C. §§ 11165.9 and 11166(j); DSS Regulations Ch. 31-501);

b) The duty to immediately refer the case by telephone, fax, or electronic transmission to an agency with proper jurisdiction, if the agency that takes a report lacks jurisdiction (P.C. §11165.9);

c) The duty to make "an initial report by telephone to the police or sheriff's department as soon as is practicably possible," and to "prepare and send, fax, or electronically transmit a written follow-up report within 36 hours of receiving the information" concerning the abuse and/or neglect (P.C. §11166(a));

d) The duty to "immediately make any investigation he or she deems necessary to determine whether child welfare services should be offered to the family and whether proceedings in the juvenile court should be commenced" (W&I §328);

e) The duty to "respond to any report of imminent danger to a child immediately" (W&I §16501(f));

f) The duty to make "an immediate in-person response" in "emergency situations" (W&I §16504(a));

g) The duty to "respond to all referrals for service which allege that a child is endangered by abuse, neglect, or exploitation" (DSS Regulations Ch. 31-101.1);

h) The duty to "immediately initiate and complete the Emergency Response Protocol process" and to "record all available and appropriate information on the Emergency Response Protocol Form" (DSS Regulations Ch. 31-105);

i) The duty to conduct an in-person immediate investigation when the "emergency response protocol indicates the existence of a situation in which imminent danger to a child, such as physical pain, injury, disability, severe emotional harm or death, is likely" (DSS Regulations Ch. 31-115);

j) The duty to request law enforcement assistance where "the physical safety of family members. . .is endangered" (DSS Regulations Ch. 31-130).

41.     Despite the fact that Defendants LEFLER-PANELA and/or DIAZ-LARA knew, had reason to know and/or reasonably suspected that Kayleigh was suffering child abuse and/or severe neglect, and an emergency situation, with deliberate indifference to the rights and safety of KAYLEIGH SLUSHER, they violated their mandatory duties to respond, investigate and/or report the abuse and/or neglect as required by law, including California Penal Code §§ 11165.9 and 11166, by California Welfare and Institutions Code §§ 328, 10553, 10554, 16501, 16504 and by California

Department of Social Services Child Welfare Services Regulations §§ 31-100, 31-101, 31-105, 31-110, 31-115, 31-120, 31-125, 31-130, and 31-501.

42.     Further, Defendants LEFLER-PANELA and/or DIAZ-LARA, with deliberate indifference to the rights and safety of KAYLEIGH SLUSHER,  failed to accept reports of suspected child abuse and/or severe neglect without legal justification and did not properly maintain a record of all reports received as mandated by Penal Code § 11165.9.

43.     Defendants LEFLER-PANELA and/or DIAZ-LARA, with deliberate indifference to the rights and safety of KAYLEIGH SLUSHER, wrongfully delivered child protective services by failing to conduct an assessment and develop a case plan as mandated by DSS Regulations §§ 31-201, 31-205, 31-206 and/or Welfare and Institutions Code §16501.1.

44.     Even though Defendants LEFLER-PANELA, DIAZ-LARA and/or DOE CWS Workers received various reports of abuse and/or severe neglect, with deliberate indifference to the rights and safety of KAYLEIGH SLUSHER, they violated their mandatory duties by choosing not conduct a basic evaluation of risks to determine whether an emergency situation existed as mandated by Welfare and Institutions Code § § 16504 and/or DSS Regulations § § 31-101, 31-105, 31-110, 31-115, 31-120 and/or 31-128.

45.     Even though Defendants LEFLER-PANELA, DIAZ-LARA and/or DOE CWS Workers received various reports of abuse and/or severe neglect, with deliberate indifference to the rights and safety of KAYLEIGH SLUSHER, they violated their mandatory duties by choosing not to control the conduct of Ryan Warner and/or Sara Kreuger, and/or otherwise protect Kayleigh as mandated by Welfare and Institutions Code § § 16501 and 16504.

46.     With deliberate indifference to the rights and safety of KAYLEIGH SLUSHER, Defendants LEFLER-PANELA and/or DIAZ-LARA violated their duties as mandated reporters to report suspected child abuse and/or severe neglect to appropriate authorities and to make initial

reports or follow up reports within 36 hours of receiving said reports of abuse and/or severe neglect as mandated by Penal Code § § 11165.9 and 11166(a).  Rather, Defendants told Plaintiff ROBIN SLUSHER she could call the police instead.

47.     On or around January 29, 2014, Plaintiff ROBIN SLUSHER again contacted NPD to inform them that her granddaughter was in grave danger, and requesting assistance.  The NPD again dispatched Defendant WADE, this time to do a welfare check for Kayleigh's benefit at 2060 Wilkins Avenue, Apt. 7.  Defendant WADE spoke with Plaintiff ROBIN SLUSHER on the telephone, who told Defendant WADE that Kayleigh was in immediate physical danger due to Mr. Warner's and Ms. Kreuger's illegal drug use in the home, their failure to provide food and care to Kayleigh, and possible physical violence against Kayleigh.  Plaintiff ROBIN SLUSHER told Defendant WADE that she had not been allowed to talk with her granddaughter, Kayleigh since approximately Thanksgiving; that she believed Kayleigh's mother, Ms. Krueger, was using drugs and allowing others to use drugs in Kayleigh's home, possibly crack cocaine; that Kayleigh was not being fed; and that when she has attempted to check on or see her granddaughter, Ms. Krueger has refused and told her that Kayleigh has been sick since Thanksgiving.

48.     On information and belief, Defendants WADE and NPD Officer DEGUILIO visited Kayleigh's residence later on January 29, 2014.  On information and belief, the following facts in this paragraph occurred at that time.  Ms. Krueger refused Defendants permission to enter the home to perform a welfare check on Kayleigh, and Defendants were aware that Ms. Krueger actively tried to conceal the inside of her home from the officers by closing the front door against her body and peeking her head out to talk to them.  During that visit, Ms. Krueger brought Kayleigh to the front door and Defendants WADE and DEGUILIO observed bruises on Kayleigh's face.  Defendants could not see the rest of Kayleigh's body, including her arms and legs, which were covered by her clothes.  Defendants were able to observe a man walk out of a back bedroom and look very

surprised to see the officers there.  Defendants saw that that man appeared to be very malnourished, with sunken cheekbones, and appeared to be a drug user.  That man told Defendants his name was Ryan Howard, and that he did not have, and he could not find, any identification.  Defendants ran a records check on "Ryan Howard," and dispatch was unable to locate any match.  That man who claimed to be "Ryan Howard" was actually "Ryan Warner."  When Defendants first encountered Ryan Howard (Warner) at Kayleigh's home, Defendants determined that he was under the influence of a controlled substance, based on their training and experience due to his appearance and obvious symptoms of drug intoxication.  Ryan Howard (Warner) admitted to Defendants that he had used marijuana and Ms. Krueger's prescription pain medication that day, without a prescription for it. Defendants entered the residence.  Defendants did not search the residence, nor did Defendants observe every room, or whether or not there were weapons or illegal drugs, or whether there was sufficient food for Kayleigh.  While Defendants were there, another man walked out of a back bedroom, whom officers recognized from past contacts as someone currently on probation.  That second man attempted to quickly leave the residence, and Defendants detained him for a probation search.  While Kayleigh was sitting on Ms. Krueger's lap on a couch, Defendants saw Kayleigh vomit.  Ms. Krueger stated that Kayleigh had the flu, and immediately took Kayleigh into the bathroom, away from the officers.  Defendants WADE and DEGUILIO also observed that Kayleigh appeared gaunt, sick, malnourished, and distressed.  Defendants did not attempt to speak with Kayleigh.  Ms. Krueger asked Defendants to leave, and Defendants left.  Defendant WADE later determined that the man claiming to be "Ryan Howard" had lied to them about his identity, and that he was actually Ryan Warner.  On information and belief, Defendants WADE and DEGUILIO also confirmed that there was an active arrest warrant for Ryan Warner and/or legal cause for his immediate arrest.  Defendants made no effort to obtain a warrant to re-enter Kayleigh's home, search Kayleigh's home, or arrest anyone in Kayleigh's home.  Defendant WADE then called

Plaintiff ROBIN SLUSHER, and told her that everything appeared normal at Kayleigh's home, and that Kayleigh had food.  Defendant WADE also promised and reassured Plaintiff ROBIN SLUSHER that he would "keep an eye on the apartment."

49.     Plaintiffs are informed and believe and thereon allege that Defendant WADE violated his promise and never went back to the apartment before Kayleigh was murdered.  On information and belief, Defendant WADE also did not ask any other member of the NPD to monitor the apartment.

50.     At all relevant times, Defendants WADE and DEGUILIO were Mandated Reporters under the California Child Abuse and Neglect Reporting Act ("CANRA").  On information and belief, Defendants WADE and DEGUILIO violated their mandatory duties to investigate and/or report the abuse and neglect as required by California Penal Code § § 11164 *et seq*, 11165.9, and 11166, despite knowing, having reason to know and/or reasonably suspecting that Kayleigh was suffering child abuse/neglect.  Neither Defendants WADE nor DEGUILIO ever made any report of suspected child abuse and/or neglect in relation to Kayleigh to Napa County CWS or any other agency or authority.

51.     Plaintiffs relied on the representations of Defendants WADE and DEGUILIO that everything appeared normal with Kayleigh and at Kayleigh's home, that there was food for Kayleigh in the home, and that they would "keep an eye on the apartment."  Those representations were false.  Had Plaintiffs known the truth about what transpired during Defendants' welfare check on Kayleigh, Plaintiffs would have taken immediate action to protect Kayleigh, including making further efforts to seek protection for Kayleigh from the NPD and the Napa County CWS, contacting other authorities or child advocates for assistance, personally going to Kayleigh's home, or engaging in other self-help to try to protect Kayleigh.  Instead, Plaintiffs relied to their (and

Kayleigh's) detriment on Defendants' false representations that everything appeared normal at Kayleigh's home, and that the NPD would monitor the apartment to protect Kayleigh.

52.     Through their volitional, intentional, and deliberately indifferent acts, omissions, and misrepresentations, Defendants WADE and DEGUILIO affirmatively placed Kayleigh Slusher in danger, exposing her to a danger which she would not have otherwise faced, and leaving her in a situation that was more dangerous than the one in which they found her.

53.     On or about February 1, 2014, NPD Officers responded to a call to do another welfare check at Kayleigh's home.  When NPD Officers arrived there, they discovered Kayleigh Slusher in her bed, deceased, with evidence of having suffered severe physical abuse.

54.     Defendants' failure to investigate and/or report the abuse and/or neglect was without legal justification, caused great pain and suffering to Plaintiffs, and caused Kayleigh Slusher's death.  These injuries, including but not limited to physical abuse, neglect and death, were of the type the California Legislature intended to prevent in enacting the Child Abuse and Neglect Reporting Act, Penal Code § 11164 *et seq*., Welfare and Institutions Code §§ 10550, 10553, 10554, and 10651.  Additionally, Defendants' affirmative acts and omissions, including failure to investigate, report, intervene and/or protect Kayleigh Slusher from known and foreseeable harms, including physical and sexual abuse and death, created danger and increased the risk of harm to Kayleigh.  Defendants further created danger and increased the risk of harm to Kayleigh, through their affirmative acts and omissions, by creating a false sense of security and safety as to Plaintiffs and others who wished to protect Kayleigh from harm, and by encouraging and/or preventing Plaintiffs and others from seeking other assistance and from protecting Kayleigh themselves.

55.     Under the Fourteenth Amendment, Plaintiff KAYLEIGH SLUSHER had a due process right to life and a liberty interest in bodily integrity and security, including a protected liberty interest to the non-discretionary investigation, reporting, and protection mandated for her

benefit by California law.  Plaintiffs JASON SLUSHER, ROBIN SLUSHER and BENNY SLUSHER had the right to familial relationships with Kayleigh.  Among other sources, these rights under the First and Fourteenth Amendments derive from statutory mandates as created by California law.  Investigation and/or reporting of child abuse and/or neglect is mandatory under the California Child Abuse and Neglect Reporting Act, Penal Code § 11164 *et seq*., Welfare and Institutions Code §§ 10550, 10553, 10554, and 10651, and is intended by law for the benefit and protection of children such as Kayleigh Slusher.  Such investigation and/or reporting is mandatory, ministerial, and is not discretionary under the CANRA.  Defendants unreasonably and unjustifiably violated their mandatory duties to investigate and/or report the abuse and/or neglect suffered by Kayleigh Slusher, despite Plaintiffs' statutory and constitutional entitlement to investigation and/or reporting under California law.  Defendants violated Plaintiffs' rights under the First and Fourteenth Amendments by failing to respond to, investigate and/or report child abuse and neglect as mandated by the CANRA.  As a direct result of Defendants' conduct, including conduct that increased the risk of harm to Kayleigh Slusher, and Defendants' failure to investigate and/or report child abuse and/or neglect as required by the United States Constitution and California law, Plaintiff Kayleigh Slusher suffered loss of life and liberty, and Plaintiffs JASON SLUSHER, ROBIN SLUSHER and BENNY SLUSHER suffered loss of their familial relationships with their daughter/granddaughter, including loss of love, companionship, comfort, affection, society, services, solace, and moral support.

56.     At all material times, and alternatively, the actions and omissions of each Defendant were intentional, wanton and/or willful, conscience shocking, reckless, malicious, deliberately indifferent to Plaintiffs' rights, done with actual malice, grossly negligent, negligent, and objectively unreasonable.

57.     As a direct and proximate result of each Defendant's acts and/or omissions as set forth above, Plaintiffs sustained the following injuries and damages, past and future, among others:

a.   Wrongful death of Kayleigh Slusher (by JASON SLUSHER, pursuant to CCP 377.60 and federal civil rights law);

b.   Hospital and medical expenses (by JASON SLUSHER, pursuant to CCP 377.20 and federal civil rights law);

c.   Coroner's fees, funeral and burial expenses (by JASON SLUSHER, pursuant to CCP 377.20 and federal civil rights law);

d.   Loss of familial relationships, including loss of love, companionship, comfort, affection, society, services, solace, and moral support (by all Plaintiffs, pursuant to CCP 377.60 and/or federal civil rights law);

e.   Pain and suffering and emotional distress (by all Plaintiffs, pursuant to federal civil rights law);

f.   Violation of constitutional rights (by all Plaintiffs, pursuant to federal civil rights law);

g.   Kayleigh Slusher's loss of life (by JASON SLUSHER pursuant to federal civil rights law);

h.   Kayleigh Slusher's conscious pain and suffering (by JASON SLUSHER pursuant to federal civil rights law);

i.   All damages and penalties recoverable under 42 U.S.C. §§ 1983, 1988, California Civil Code §§ 52 and 52.1, California Code of Civil Procedure §1021.5, and as otherwise allowed under California and United States statutes, codes, and common law.

58.   Plaintiff JASON SLUSHER, and the Estate of Kayleigh Slusher, Deceased, who bring state law claims herein, timely and properly filed tort claims pursuant to Cal. Gov. Code § 910 et seq., and for all Plaintiffs this action is timely filed within all applicable statutes of limitation.


**COUNT ONE**
**-- 42 U.S.C. §1983 --**
**ALL PLAINTIFFS AGAINST DEFENDANTS WADE, DEGUILIO, LEFLER-PANELA, DIAZ-LARA and DOES 1-50**

59.   Plaintiffs reallege each and every paragraph in this complaint as if fully set forth here.

60.     By the actions and omissions described above, Defendants violated 42 U.S.C. §1983, depriving Plaintiffs of the following clearly established and well-settled constitutional rights protected by the United States Constitution:

    a.  The right to be free from deprivation of life and liberty, and interference with bodily integrity and security, as protected by the Due Process Clause of the Fourteenth Amendment;

    b.  The right to bodily integrity and security with the liberty interests created for Plaintiffs' benefit and protection by state law, including mandatory duties to report, investigate, and protect children from child abuse and/or neglect, to which entitlement was created statutorily by the Child Abuse and Neglect Reporting Act, Penal Code § 11164 *et seq*., Welfare and Institutions Code §§ 10550, 10553, 10554, and 10651, and other mandatory authority cited herein, as protected by the Due Process Clause of the Fourteenth Amendment;

    c.  The right to be free from wrongful governmental interference with familial relationships as secured by the First and Fourteenth Amendments and California Code of Civil Procedure § § 377.20 et seq. and 377.60 et seq.

61.     Defendants subjected Plaintiffs to their wrongful conduct, depriving Plaintiffs of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Plaintiffs would be violated by their acts and/or omissions.

62.     As a direct and proximate result of Defendants' acts and/or omissions as set forth above, Plaintiffs sustained injuries and damages as set forth at ¶ 57, above.

63.     The conduct of Defendants entitles Plaintiffs to punitive damages and penalties allowable under 42 U.S.C. §1983 and California law.  Plaintiffs do not seek punitive damages against Defendant public entities.

64.     Plaintiffs are also entitled to reasonable costs and attorneys' fees under 42 U.S.C. §1988 and applicable California codes and laws.

**COUNT TWO**
**- 42 U.S.C. §1983 (*Monell*)–**
**ALL PLAINTIFFS AGAINST DEFENDANTS CITY OF NAPA, CHIEF OF POLICE**
**RICHARD MELTON and COUNTY OF NAPA**

65.     Plaintiffs reallege each and every paragraph in this complaint as if fully set forth here.

66.     On information and belief, the unconstitutional actions and/or omissions of Defendants, were pursuant to the following customs, policies, practices, and/or procedures of the CITY OF NAPA and the COUNTY OF NAPA, which were directed, encouraged, allowed, and/or ratified by policy making officers for the CITY OF NAPA, the NAPA POLICE DEPARTMENT, the COUNTY OF NAPA, and/or NAPA CHILD WELFARE SERVICES:

a.     To tolerate and permit the violation of mandatory duties to report and/or investigate and/or take other mandatory action in response to reports of child abuse and/or neglect;

b.     To fail to use and require appropriate and generally accepted law enforcement and/or child welfare services policies, procedures, and training in handling child abuse and/or neglect reports and investigations;

c.     To cover-up violations of constitutional rights by any or all of the following:

i.     by failing to properly investigate and/or evaluate complaints or incidents of failure to report and/or investigate reports of child abuse and/or neglect;

ii.    by ignoring and/or failing to properly and adequately investigate and discipline unconstitutional or unlawful police and/or child welfare services activity; and

iii.   by allowing, tolerating, and/or encouraging police officers and CWS workers to: fail to file complete and accurate police and/or CWS reports; file false reports; make false statements; intimidate, bias and/or "coach" witnesses to give false information and/or to attempt to bolster officers' and/or CWS employees' stories; and/or obstruct or interfere with investigations of unconstitutional or unlawful conduct, by withholding and/or concealing material information;

d.     To allow, tolerate, and/or encourage a "code of silence" among law enforcement officers and police department personnel, whereby an officer or

COMPLAINT AND JURY DEMAND                                                                        19

1    member of the department does not provide adverse information against a
2    fellow officer or member of the department; and,

3    e.    To fail to institute, require, and enforce necessary, appropriate and lawful
      policies, procedures, and training programs to prevent or correct the
4    unconstitutional conduct, customs, and practices and procedures described in
      this Complaint and in paragraphs (a) through (e), with deliberate indifference
5    to the rights and safety of Plaintiffs the public, and in the face of an
      obvious need for such policies, procedures, and training programs; and

6    f.    To use or tolerate inadequate, deficient, and improper procedures for
7    handling, investigating, and reviewing complaints of officer and/or employee
      misconduct made under California Government Code § 910 et seq.

8    67.    Defendants CITY OF NAPA, CHIEF OF POLICE RICHARD MELTON, COUNTY

9    OF NAPA, and DOES 1–50 failed to properly hire, train, instruct, monitor, supervise, evaluate,

10   investigate, and discipline Defendants, with deliberate indifference to Plaintiffs' constitutional

11   rights, which were thereby violated as described above.

12   68.    The unconstitutional actions and/or omissions of Defendants, as described above,

13   were approved, tolerated and/or ratified by policy-making officers for the NAPA POLICE

14   DEPARTMENT and COUNTY OF NAPA CHILD WELFARE SERVICES.  Plaintiffs are

15   informed and believe, and thereupon allege, that the details of this incident have been revealed to

16   the authorized policy makers within the CITY OF NAPA and the COUNTY OF NAPA, including

17   CHIEF OF POLICE RICHARD MELTON and DOES 1–50, and Plaintiffs are further informed and

18   believe, and thereupon allege, that such policy makers have direct knowledge of the facts of this

19   incident.  Notwithstanding this knowledge, the authorized policy makers within the CITY OF

20   NAPA and the COUNTY OF NAPA have approved of the conduct of Defendants, and have made a

21   deliberate choice to endorse the decisions of those defendant officers and the basis for those

22   decisions.  By doing so, the authorized policy makers of the CITY OF NAPA and the COUNTY OF

23   NAPA have shown affirmative agreement with each individual Defendant officer's actions, and

24   have ratified the unconstitutional acts of the individual Defendants.

69.     The aforementioned customs, policies, practices, and procedures, the failures to properly and adequately hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline, as well as the unconstitutional orders, approvals, ratification and toleration of wrongful conduct of Defendants CITY OF NAPA, CHIEF OF POLICE RICHARD MELTON, COUNTY OF NAPA, and DOES 1–50 were a moving force and/or a proximate cause of the deprivations of Plaintiffs' clearly established and well-settled constitutional rights in violation of 42 U.S.C. §1983, as more fully set forth in ¶ 60, above.

70.     Defendants subjected Plaintiffs to their wrongful conduct, depriving Plaintiffs of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Plaintiffs and others would be violated by their acts and/or omissions.

71.     As a direct and proximate result of the unconstitutional actions, omissions, customs, policies, practices and procedures of Defendants as described above, Plaintiffs sustained serious injuries and are entitled to damages, penalties, costs and attorney fees as set forth in ¶¶ 61-64, above, including punitive damages against DEFENDANTS CHIEF OF POLICE RICHARD MELTON and DOES 1–50, in their individual capacities.

**COUNT THREE**
**-- VIOLATION OF CIVIL CODE §52.1 --**
**PLAINTIFF JASON SLUSHER AGAINST DEFENDANTS WADE, DEGUILIO, LEFLER-PANELA, DIAZ-LARA, DOES 1-50, CITY OF NAPA AND COUNTY OF NAPA**

72.     Plaintiffs reallege each and every paragraph in this complaint as if fully set forth here.

73.     By their acts, omissions, customs, and policies, each Defendant, acting in concert/conspiracy, as described above, violated KAYLEIGH SLUSHER'S rights under California Civil Code §52.1, and the following clearly-established rights under the United States Constitution and the California Constitution:

a. The right to be free from deprivation of life and liberty, and interference with bodily integrity and security, as protected by the Due Process Clauses of the Fourteenth Amendment of the United States Constitution and Art. 1, Sec. 7 of the California Constitution;

b. The right to bodily integrity and security with the liberty interest created for Plaintiffs' benefit and protection by state law, including mandatory duties to report, investigate, and protect children from child abuse and/or neglect, to which entitlement was created statutorily by the Child Abuse and Neglect Reporting Act, Penal Code § 11164 *et seq*., Welfare and Institutions Code §§ 10550, 10553, 10554, and 10651, and other mandatory authority cited herein, as  protected by the Due Process Clauses of the Fourteenth Amendment of the United States Constitution and Art. 1, Sec. 7 of the California Constitution;

c. The right to be free from wrongful governmental interference with familial relationships as secured by the First and Fourteenth Amendments of the United States Constitution, Art. 1, Secs. 1 and 7 of the California Constitution, and California Code of Civil Procedure § § 377.20 et seq. and 377.60 et seq.;

d. The right to enjoy and defend life and liberty, acquire, possess and protect property, and pursue and obtain safety, happiness and privacy, as secured by the California Constitution, Article 1, Section 1;

e. The right to protection from bodily restraint, harm, or personal insult, as secured by Cal. Civil Code § 43.

74. Separate from, and above and beyond, Defendants' attempted interference, interference with, and violation of Plaintiffs' rights, Defendants violated Plaintiffs' rights by the following conduct constituting threat, intimidation, or coercion:

a. Intentionally, or with deliberate indifference, and without legal justification, violating mandatory duties to investigate and/or report child abuse and/or neglect as required by California Child Abuse and Neglect Reporting Act, Penal Code § 11164 *et seq*., Welfare and Institutions Code §§ 10550, 10553, 10554, and 10651.

b. Intentionally, or with deliberate indifference, and without legal justification, depriving Kayleigh Slusher of necessary, life-saving measures mandated by law for her protection;

c. Intentionally, or with deliberate indifference, and without legal justification, affirmatively placing Kayleigh Slusher at danger, exposing her to a danger

which she would not have otherwise faced, and leaving her in a situation that was more dangerous than the one in which they found her;

    d.    By going to Kayleigh Slusher's home, then violating their mandatory duties described herein, affirmatively increasing her risk of harm, through their conduct and misrepresentations preventing others from coming to her aid and rescue;

    e.    Intentionally, or with deliberate indifference, and without legal justification, causing Kayleigh Slusher to remain in an abusive and deadly household, including known drug abuse, criminal activity, physical abuse and injury, starvation, and cruelty, while foreclosing other, more caring, sources of hope and rescue.

75.    As a direct and proximate result of Defendants' violation of California Civil Code §52.1 and of Plaintiffs' rights under the United States and California Constitutions, Plaintiffs sustained injuries and damages, and against each and every Defendant are entitled to relief as set forth above at ¶¶ 61-64, including all damages allowed by California Civil Code §§ 52, 52.1, and California law, not limited to three times actual damages, costs, attorneys' fees, and civil penalties. For this claim, the Defendants City of Napa and County of Napa are vicariously liable for the conduct of their employees and agents pursuant to Cal. Gov. Code § 815.2.

**COUNT FOUR**
**-- NEGLIGENCE AND NEGLIGENCE PER SE; PERSONAL INJURIES --**
**PLAINTIFF JASON SLUSHER AGAINST ALL DEFENDANTS**

76.    Plaintiffs reallege each and every paragraph in this complaint as if fully set forth here.

77.    At all times, each Defendant owed Plaintiffs KAYLEIGH SLUSHER, Deceased, and JASON SLUSHER the duty to act with due care in the execution and enforcement of any right, law, or legal obligation.

78.    At all times, each Defendant owed Plaintiffs the duty to act with reasonable care. Furthermore, Defendants owed the mandatory duties to respond, investigate and/or report child

abuse and/or neglect as required by law, including the California Child Abuse and Neglect Reporting Act, Penal Code § 11164 *et seq*., Welfare and Institutions Code §§ 10550, 10553, 10554, and 10651 California Penal Code §§ 11165.9 and 11166, and by California Department of Social Services Child Welfare Services Regulations §§ 31-100, 31-105, 31-110, 31-115, 31-120, 31-125, 31-130, and 31-501.

79.     The injuries suffered by Plaintiffs, including but not limited to physical abuse, neglect, death, loss of familial relationships and emotional distress were of the type the California Legislature intended to prevent in enacting the Child Abuse and Neglect Reporting Act, Penal Code § 11164 *et seq*., Welfare and Institutions Code §§ 10550, 10553, 10554, and 10651, and were of the type the California Department of Social Services Child Welfare Services intended to prevent in enacting Regulations §§ 31-100, 31-105, 31-110, 31-115, 31-120, 31-125, 31-130, and 31-501.

80.     Additionally, the general duties of reasonable care and due care owed to Plaintiffs by Defendants CITY OF NAPA, CHIEF OF POLICE RICHARD MELTON and COUNTY OF NAPA, through their employees and agents, include but are not limited to the following specific obligations:

a.     to properly and adequately hire, investigate, train, supervise, monitor, evaluate, and discipline their employees, agents, and/or law enforcement officers to ensure that those employees/agents/officers act at all times in the public interest and in conformance with law;

b.     to make, enforce, and at all times act in conformance with policies and customs that are lawful and protective of individual rights, including Plaintiffs';

c.     to refrain from making, enforcing, and/or tolerating the wrongful policies and customs set forth at ¶ 66, above.

81.     All Defendants, through their acts and omissions, breached each and every one of the aforementioned duties owed to Plaintiffs.

82.     Defendants' breaches of law, standards, and mandatory duties set forth herein also constitute negligence per se.

83.     Defendants CITY OF NAPA and COUNTY OF NAPA are vicariously liable for the conduct of their employees and agents pursuant to Cal. Gov. Code § 815.2, and for their employees' breach of mandatory duties under Cal. Gov. Code § 815.6.

84.     As a direct and proximate result of Defendants' negligence, Plaintiffs sustained injuries and damages, and against each and every Defendant are entitled to relief as set forth above at ¶¶ 61-64, including punitive damages against all Defendant law enforcement officers and Defendant CWS workers under California law.


WHEREFORE, Plaintiffs respectfully request the following relief against each and every Defendant herein, jointly and severally:

a.   compensatory and exemplary damages in an amount according to proof and which is fair, just and reasonable;

b.   punitive damages under 42 U.S.C. §1983 and California law in an amount according to proof and which is fair, just, and reasonable (punitive damages are not sought against the City of Napa or the County of Napa);

c.   all other damages, penalties, costs, interest, and attorneys' fees as allowed by 42 U.S.C. §§ 1983, 1988; Cal. Code Civ. Proc. § 1021.5, Cal. Civil Code §§ 52 et seq., 52.1, and as otherwise may be allowed by California and/or federal law;

d.   Injunctive relief, including but not limited to the following:

    i.    an order requiring Defendants to institute and enforce appropriate and lawful policies and procedures for complying with mandatory duties for handling reports and investigations of child abuse and/or neglect;

    ii.   an order prohibiting Defendants and their law enforcement officers from engaging in the "code of silence" as may be supported by the evidence in this case;

1                    iii.      an order requiring Defendants to train their law
                               enforcement officers concerning generally accepted and
2                              proper tactics and procedures for handling reports and
                               investigations of child abuse and/or neglect and this
3                              Court's orders concerning the issues raised in injunctive
                               relief requests i-ii, above;
4

5           e.       such other and further relief as this Court may deem appropriate.

6

7   DATED: May 29, 2015                    HADDAD & SHERWIN LLP

8

9                                          /s/  Michael J. Haddad_____
                                           MICHAEL J. HADDAD
10                                         Attorneys for Plaintiffs

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>**JURY DEMAND**</u>

2

    Plaintiffs hereby request a trial by jury.

3

4

DATED: May 29, 2015                 HADDAD & SHERWIN LLP

5

6

                           /s/  Michael J. Haddad

7

                           MICHAEL J. HADDAD
                           Attorneys for Plaintiffs

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28