MICHAEL J. HADDAD (State Bar No. 189114)
JULIA SHERWIN (State Bar No. 189268)
T. KENNEDY HELM (State Bar No. 282319)
HADDAD & SHERWIN LLP
505 Seventeenth Street
Oakland, California  94612
Telephone: (510) 452-5500
Facsimile:   (510) 452-5510

Attorneys for Plaintiffs
KAYLEIGH SLUSHER, Dec., JASON SLUSHER,
ROBIN SLUSHER and BENNY SLUSHER

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAYLEIGH SLUSHER, Deceased, THROUGH HER SUCCESSOR IN INTEREST JASON SLUSHER; JASON SLUSHER, Individually; ROBIN SLUSHER, Individually; and BENNY SLUSHER, Individually, <br><br>                    Plaintiffs, <br><br>vs. <br><br>CITY OF NAPA, a public entity; NAPA POLICE OFFICER GARRETT WADE, Individually; NAPA POLICE OFFICER DEGUILIO, Individually; NAPA POLICE OFFICER ROBERT CHAMBERS, Individually; NAPA POLICE OFFICER GARRETT SMITH, Individually; NAPA POLICE OFFICER JOSHUA SMITH, Individually; COUNTY OF NAPA, a public entity; NAPA COUNTY CHILD WELFARE SERVICES SOCIAL WORKER NANCY LEFLER, Individually; NAPA COUNTY CHILD WELFARE SERVICES WORKER ROCIO DIAZ-LARA, Individually; and DOES 1–50, Jointly and Severally <br><br>                    Defendants. | No:  15-cv-02394-SBA <br><br> Hon. Saundra B. Armstrong <br><br> **SECOND AMENDED COMPLAINT FOR DAMAGES, DECLARATORY, AND INJUNCTIVE RELIEF, AND DEMAND FOR JURY TRIAL** |

Plaintiffs, by and through their attorneys, HADDAD & SHERWIN LLP, for their Second Amended Complaint against Defendants, state as follows:

### JURISDICTION AND INTRADISTRICT ASSIGNMENT

1. This is a civil rights action arising from Defendants' violation of mandatory duties to investigate and/or report child abuse and/or neglect, to take 3-year-old KAYLEIGH SLUSHER into protective custody and obtain emergency medical treatment for her, and to refrain from creating danger and increasing Plaintiffs' risk of harm, which resulted in the death of Plaintiff KAYLEIGH SLUSHER, Deceased, on or about January 30, 2014, in the City of Napa, Napa County, California. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988; and the First and Fourteenth Amendments to the United States Constitution, as well as the laws and Constitution of the State of California. Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1343(a)(3) and (4), and the aforementioned statutory and constitutional provisions. Plaintiffs further invoke the supplemental jurisdiction of this Court pursuant to 28 U.S.C. §1367 to hear and decide claims arising under state law.

2. A substantial part of the events and/or omissions complained of herein occurred in the City of Napa, Napa County, California, and this action is properly assigned to the San Francisco or Oakland Divisions of the United States District Court for the Northern District of California, pursuant to Civil Local Rule 3-2(e).

### PARTIES AND PROCEDURE

3. Plaintiff JASON SLUSHER is the father of decedent, KAYLEIGH SLUSHER. Plaintiff JASON SLUSHER brings these claims individually and as a Successor in Interest for his daughter and only child, Kayleigh Slusher, Deceased, pursuant to California Code of Civil Procedure sections 377.20 et seq. and 377.60 et seq. which provide for survival and wrongful death

actions.  These claims are also brought individually and on behalf of Kayleigh Slusher, Deceased, on the basis of 42 USC §§ 1983 and 1988, the United States Constitution, and federal and state civil rights law.  JASON SLUSHER is a resident of the State of California.  At all times, Plaintiff JASON SLUSHER adored his daughter KAYLEIGH and had a close and loving relationship with her.

4.       Plaintiff ROBIN SLUSHER is the grandmother of Decedent KAYLEIGH SLUSHER and a resident of the State of California.  Plaintiff ROBIN SLUSHER brings these claims individually.  Plaintiff ROBIN SLUSHER had the closest possible healthy relationship with her granddaughter, KAYLEIGH SLUSHER, that a grandmother could have.  For substantial periods of KAYLEIGH SLUSHER'S life, ROBIN and BENNY SLUSHER provided for KAYLEIGH'S financial, emotional, and physical support, including while KAYLEIGH lived in ROBIN and BENNY SLUSHER'S home, and afterward.  ROBIN and BENNY SLUSHER had a long-standing custodial relationship with KAYLEIGH SLUSHER such that they constituted a family unit.  Besides Plaintiffs JASON SLUSHER, ROBIN SLUSHER, and BENNY SLUSHER, no other person had a closer, more intimate, healthy, familial relationship with KAYLEIGH SLUSHER.

5.       Plaintiff BENNY SLUSHER is the grandfather of Decedent KAYLEIGH SLUSHER and a resident of the State of California.  Plaintiff BENNY SLUSHER brings these claims individually.  Plaintiff BENNY SLUSHER had the closest possible healthy relationship with his granddaughter, KAYLEIGH SLUSHER, that a grandfather could have.  For substantial periods of KAYLEIGH SLUSHER'S life, ROBIN and BENNY SLUSHER provided for KAYLEIGH'S financial, emotional, and physical support, including while KAYLEIGH lived in ROBIN and BENNY SLUSHER'S home, and afterward.  ROBIN and BENNY SLUSHER had a long-standing custodial relationship with KAYLEIGH SLUSHER such that they constituted a family unit. Besides

Plaintiffs JASON SLUSHER, ROBIN SLUSHER, and BENNY SLUSHER, no other person had a closer, more intimate, healthy, familial relationship with KAYLEIGH SLUSHER.

6.    Defendant CITY OF NAPA is a public entity established by the laws and Constitution of the State of California, and owns, operates, manages, directs, and controls the Napa Police Department ("NPD") which employs other defendants in this action.

7.    Defendant NAPA POLICE OFFICER GARRETT WADE ("WADE") at all material times was employed as a law enforcement officer by NPD, and was acting within the course and scope of that employment.  Defendant WADE is being sued in his individual capacity.

8.    Defendant NAPA POLICE OFFICER DEGUILIO ("DEGUILIO") at all material times was employed as a law enforcement officer by NPD, and was acting within the course and scope of that employment.  Defendant DEGUILIO is being sued in his individual capacity.

9.    Defendant NAPA POLICE OFFICER ROBERT CHAMBERS ("CHAMBERS") at all material times was employed as a law enforcement officer by NPD, and was acting within the course and scope of that employment.  Defendant CHAMBERS is being sued in his individual capacity.

10.    Defendant NAPA POLICE OFFICER "GARRETT SMITH" at all material times was employed as a law enforcement officer by NPD, and was acting within the course and scope of that employment.  Defendant GARRETT SMITH is being sued in his individual capacity.

11.    Defendant NAPA POLICE OFFICER "JOSHUA SMITH" at all material times was employed as a law enforcement officer by NPD, and was acting within the course and scope of that employment.  Defendant JOSHUA SMITH is being sued in his individual capacity.

12.    Plaintiffs note that the identities and involvement of Defendants GARRETT and JOSHUA SMITH in this matter were revealed by Defendant CHAMBERS during testimony in the preliminary hearing in the murder cases against Sara Krueger on November 11, 2015, and it is

possible that Defendant CHAMBERS misspoke and that only one "Officer Smith" was involved. Plaintiffs allege that GARRETT SMITH and JOSHUA SMITH may be the same person.  Because the City of Napa Defendants, to date, have not provided PLAINTIFFS with the police reports in this matter, Plaintiffs are unable to determine at this time whether Officers Garrett and Joshua Smith are the same person.  Plaintiffs reserve the right to move to amend this complaint after receiving the Napa Police Report concerning this incident.

13.     Defendant DOE Police Officers ("Doe Police Officers") at all material times were employed as law enforcement officers by Defendant City of Napa, and were acting within the course and scope of that employment.  Defendant Doe Police Officers are being sued in their individual capacities.

14.     Defendant COUNTY OF NAPA is a public entity established by the laws and Constitution of the State of California, and owns, operates, manages, directs, and controls Napa County Child Welfare Services ("CWS") which employs other defendants in this action.

15.     Defendant CWS worker NANCY LEFLER-PANELA at all material times was employed as a child welfare services social worker by CWS and was acting within the course and scope of that employment.  Defendant LEFNER is being sued in her individual capacity.

16.      Defendant CWS worker ROCIO DIAZ-LARA at all material times was employed as a child welfare services social worker by CWS and was acting within the course and scope of that employment.  Defendant DIAZ-LARA is being sued in her individual capacity.

17.     Defendant DOE CWS Workers ("Doe CWS Workers") at all material times were employed as Child Welfare Services workers by Defendant County of Napa, and were acting within the course and scope of that employment.  Doe Defendant CWS Workers are being sued in their individual capacities.

18.     The true names and capacities of other Defendants sued as DOES 1–50 ("DOE DEFENDANTS"), including Doe Police Officers and Doe CWS Workers, are unknown to Plaintiffs, who therefore sue these Defendants by such fictitious names, and Plaintiffs will seek leave to amend this complaint to show their true names and capacities when the same are ascertained.  Each DOE DEFENDANT was an employee/agent of either the CITY OF NAPA or the COUNTY OF NAPA, and at all material times acted within the course and scope of that relationship.  Plaintiffs are informed and believe and thereon allege that each of the Defendants sued herein was negligently, wrongfully, and otherwise responsible in some manner for the events and happenings as hereinafter described, and proximately caused injuries and damages to Plaintiffs. Further, one or more DOE DEFENDANTS was at all material times responsible for the hiring, training, supervision, and discipline of other defendants, including DOE DEFENDANTS.

19.     Plaintiffs are informed and believe, and thereon allege, that each of the Defendants was at all material times an agent, servant, employee, partner, joint venturer, co-conspirator, and/or alter ego of the remaining Defendants, and in doing the things herein alleged, was acting within the course and scope of that relationship.  Plaintiffs are further informed and believe, and thereon allege, that each of the Defendants herein gave consent, aid, and assistance to each of the remaining Defendants, and ratified and/or authorized the acts or omissions of each Defendant as alleged herein, except as may be hereinafter otherwise specifically alleged.

20.     At all material times, each Defendant was jointly engaged in tortious activity, and an integral participant in the conduct described herein, including the violation of mandatory duties to investigate and/or report child abuse and/or neglect and to take KAYLEIGH SLUSHER into protective custody and obtain emergency medical treatment for her, and the increase of Plaintiffs' risk, resulting in the deprivation of Plaintiffs' constitutional rights and other harm.

21.     At all material times, each Defendant acted under color of the laws, statutes, ordinances, and regulations of the State of California and also of the CITY OF NAPA, and/or COUNTY OF NAPA.

22.     The acts and omissions of all Defendants as set forth herein were at all material times pursuant to the actual customs, policies, practices and procedures of the Defendants CITY OF NAPA and/or COUNTY OF NAPA.

23.     Plaintiffs bring these claims as Private Attorneys General, to vindicate not only their own rights but others' civil rights of great importance.

24.     This complaint may be pled in the alternative pursuant to Federal Rule of Civil Procedure 8(d).

## GENERAL ALLEGATIONS

25.     Plaintiffs reallege each and every paragraph in this complaint as if fully set forth here.

26.     On or about January 30, 2014, KAYLEIGH SLUSHER died in her home due to prolonged and severe child abuse and neglect committed by her mother's boyfriend Ryan Scott Warner and/or her mother, Sara Krueger, at 2060 Wilkins Avenue, Apt. 7, in the City of Napa, County of Napa, California.  KAYLEIGH was three years old.  At this time, Plaintiffs are unaware of all details concerning the exact circumstances and manner of Kayleigh Slusher's homicide, because the Napa Police Department has not provided such information in response to Plaintiffs' lawful requests for such information.

27.     However, the preliminary hearing in the murder cases against Mr. Warner and Ms. Krueger occurred on November 9 and 10, 2015.  Plaintiffs supplement the facts here with sworn testimony from the preliminary hearing.

28.      At all relevant times herein, Decedent KAYLEIGH SLUSHER was a minor and was a resident of the County of Napa and the City of Napa.  On information and belief, KAYLEIGH SLUSHER had been a Dependency client of County of Napa CWS from approximately October 2010 until approximately April 2012.

29.      Prior to Kayleigh's death, PLAINTIFF ROBIN SLUSHER and others informed Defendants WADE and/or DOE NPD Officers on multiple occasions that Kayleigh was suffering abuse, neglect and was in immediate physical danger in her home due to the conduct, crimes, and activities of Mr. Warner and Ms. Krueger, including but not limited to abuse of unlawful controlled substances.

30.      KAYLEIGH SLUSHER was born on May 3, 2010, Plaintiff ROBIN SLUSHER'S birthday.

31.      KAYLEIGH SLUSHER and her mother Sara Krueger, lived with KAYLEIGH'S grandparents, Plaintiffs ROBIN and BENNY SLUSHER, for over a year.  In addition, when KAYLEIGH moved from ROBIN and BENNY SLUSHER'S home into an apartment with her mother, Sara Krueger, Plaintiffs ROBIN and BENNY SLUSHER paid for Ms. Krueger's rent and telephone expenses for several months so that KAYLEIGH could have a safe place to live and contact with her family.

32.      In addition, throughout KAYLEIGH'S life, Plaintiffs ROBIN and BENNY SLUSHER, in addition to JASON SLUSHER, paid for Kayleigh's clothing, toys, material needs, medicine, and bought food for the household in which KAYLEIGH lived, including when KAYLEIGH and Ms. Krueger lived separately from ROBIN and BENNY SLUSHER.

33.      In addition, ROBIN and BENNY SLUSHER frequently had custody of KAYLEIGH for overnight and weekend visits, and frequently had her with them during the day, even when

KAYLEIGH did not live full-time in the SLUSHERS' house. The parties lived near each other, in the City of Napa, and ROBIN and BENNY SLUSHER saw KAYLEIGH regularly.

34.     In or around October 2013, Ms. Krueger began denying ROBIN and BENNY SLUSHER their usual access to, and contacts with, their granddaughter KAYLEIGH. During this time, Plaintiff JASON SLUSHER was in prison for a crime unrelated to his relationship with KAYLEIGH SLUSHER, and he was not able to protect his daughter.

35.     During this time, Plaintiffs are informed and believe and thereon allege that Ms. Krueger was using illegal drugs and had moved Ryan Warner, who was also using illegal drugs and had a criminal history and a warrant for his arrest, into her home, thereby endangering the life and safety of KAYLEIGH SLUSHER. Despite repeated attempts by Plaintiff ROBIN SLUSHER to see her granddaughter, Ms. Krueger repeatedly refused ROBIN access to KAYLEIGH for a matter of months.

36.     On or about October 6, 2013, unknown DOE officers and/or a Sergeant of the Napa Police Department went to KAYLEIGH SLUSHER'S home for a disturbing the peace call. No officer did anything to maintain KAYLEIGH'S safety or report suspected child endangerment, abuse or neglect to any authority. Plaintiffs do not yet have the facts concerning this law enforcement visit to KAYLEIGH'S home, because the City of Napa Defendants have not yet produced the police reports in this matter.

37.     On or about January 8, 2014, unknown DOE officers of the Napa Police Department went to KAYLEIGH SLUSHER'S home on patrol. No officer did anything to maintain KAYLEIGH'S safety or report suspected child endangerment, abuse or neglect to any authority. Plaintiffs do not yet have the facts concerning this law enforcement visit to KAYLEIGH'S home, because the City of Napa Defendants have not yet produced the police reports in this matter.

38.     On or about January 23, 2014, Plaintiff ROBIN SLUSHER contacted NPD to request a welfare check on KAYLEIGH.  ROBIN SLUSHER called Defendant NPD to inform the police that KAYLEIGH may be suffering severe abuse, neglect, was in immediate physical danger, and to request police intervention to save KAYLEIGH.  MS. SLUSHER called anonymously because she did not want Ms. Krueger to learn she had called the police and preclude her from seeing KAYLEIGH.

39.     During the January 23, 2014, call, MS. SLUSHER informed Defendant NPD that KAYLEIGH was living in a dangerous household with "Ryan," whose last name she did not know, but who had a warrant for his arrest.  MS. SLUSHER informed Defendant NPD that Mr. Warner and Ms. Krueger were using illegal drugs such as "crank" (methamphetamine) in KAYLEIGH'S home, and she was worried about whether or not KAYLEIGH was being given enough food and for KAYLEIGH'S safety.

40.     On or about January 23, 2014, around 6:10 p.m., Defendant WADE was dispatched to go to KAYLEIGH SLUSHER'S home at 2060 Wilkins Avenue, Apt. 7, for a warrant arrest.  On information and belief, Defendant WADE was advised that a man who lived there (Mr. Warner), had an outstanding warrant for his arrest.  On information and belief, Defendant WADE was also advised that a small child of three or four years old, Kayleigh, was in immediate physical danger due to Mr. Warner's and Ms. Krueger's illicit drug use in the home at 2060 Wilkins Avenue, Apt. 7, due to Mr. Warner's and Ms. Krueger's failure to provide food to Kayleigh, due to drug users coming in and out of the home at all hours, and due to possible physical violence against Kayleigh. On information and belief, Defendant WADE was also advised that Mr. Warner stays inside the home with Kayleigh all the time, smokes all the time, uses "Crank," and he might be armed.

41.     Rather than perform a welfare check or any investigation into Kayleigh's safety and wellbeing, Plaintiffs are informed and believe and thereon allege that Defendant WADE decided

not to go to the apartment where Kayleigh lived, not to investigate further, not to report suspected child abuse or neglect even to Child Welfare Services (CWS) as he was mandated to do, not to seek further advice, assistance, or backup, not to serve any warrant there, and not to arrest any fugitive who may be living with Kayleigh and using drugs around her, and instead Defendant WADE cleared the call.  On information and belief, Defendant WADE chose not to investigate the report of child abuse and/or neglect in Kayleigh's home, because he determined that the environment in which Kayleigh lived was not safe for him or his partner to go there.

42.    At all relevant times, Defendant WADE was a Mandated Reporter under the California Child Abuse and Neglect Reporting Act ("CANRA"), including California Penal Code §11165.7.  Despite the fact that Defendant WADE knew, had reason to know and/or reasonably suspected that Kayleigh was suffering child abuse and/or neglect, Defendant WADE failed to investigate and/or report the abuse and neglect as required by California Penal Code §§ 11164 *et seq*, 11165.9, and 11166.  Defendant WADE never made any report of child abuse and/or neglect in relation to Kayleigh to Napa County CWS or any other authority.

43.    If Defendant WADE had gone to Kayleigh's home on January 23, 2014, as he was dispatched to do, he would have seen that Kayleigh was gaunt, malnourished, had sunken eyes that her neighbors had seen, and had multiple bruises and blunt force injuries about her body, including her face, head, neck, arms, legs, front torso, back torso, and buttocks.  In addition, by January 23, 2014, Kayleigh had suffered a broken left posterior 10th rib, which would have been excruciatingly painful, causing extreme pain every time she took a breath or moved her torso.  On autopsy, that rib fracture was noted to be in a healing stage such that the fracture was at least two weeks old at the time of Kayleigh's death on January 30, 2014.  If Defendant WADE had gone to Kayleigh's home on January 23, 2014, as required, he would have seen the extreme child abuse to which she was subjected, and been **required**, based on generally accepted law enforcement standards and training,

1   to take her into protective custody, obtain medical treatment for her, and immediately report the

2   suspected child abuse to Child Welfare Services, among other things.

3         44.      On or about the morning of January 27, 2014, according to Defendant ROBERT

4   CHAMBERS, Defendant officers ROBERT CHAMBERS and GARRETT SMITH of the Napa

5   Police Department were dispatched to KAYLEIGH'S home due to a neighbor's report of a

6   domestic disturbance that was becoming physical, with subjects inside KAYLEIGH'S apartment

7   yelling and a loud commotion.  At all relevant times, these Defendants were Mandated Reporters

8   under the California Child Abuse and Neglect Reporting Act ("CANRA"), including California

9   Penal Code §11165.7.  These Defendants knew, had reason to know and/or reasonably suspected

10  that Kayleigh was suffering child abuse and/or neglect, and failed to investigate and/or report the

11  abuse and neglect as required by California Penal Code §§ 11164 *et seq*, 11165.9, and 11166.

12  Based on their mandatory duties under CANRA, and generally accepted law enforcement standards

13  and training, and based on facts and information they knew and/or must have known as described in

14  succeeding paragraphs, Defendant officers CHAMBERS and SMITH were **required** to take

15  Kayleigh into protective custody, obtain medical treatment for her, and immediately report the

16  suspected child abuse to Child Protective Services, among other things.  These Defendants never

17  made any report of child abuse and/or neglect in relation to Kayleigh to Napa County CWS or any

18  other authority, never made any mandated investigation, never took her into protective custody, and

19  never obtained medical care for her.

20        45.      By the time of Defendants CHAMBERS' and GARRETT SMITH's investigation at

21  KAYLEIGH'S home on the morning of January 27, 2014, Kayleigh was obviously suffering from

22  severe child abuse and neglect.  She was "emaciated" according to the autopsy report and had a

23  paucity of fatty tissue due to malnutrition.  She was also dehydrated.  While Kayleigh's height of

24  41" long was in the 90th percentile for her age, her weight, 34 pounds, was in the 20[th] percentile.

Kayleigh had dark bruising around her eyes, and her eyes and cheeks were sunken in.  She had a huge, 4" bruise on the front of her forehead, and another large bruise on her left temple.  She had multiple bruises from blunt force trauma to her head, neck, arms, legs, back, torso and buttocks.  She had 8 to 15 individual bruises and abrasions to her abdomen.  All of this information was readily apparent and/or available to Defendant officers CHAMBERS and SMITH.

46.    Many of the bruises were in the healing phases, and up to a week or two old.

47.    Also by the time of Defendants CHAMBERS' and SMITH's investigation on January 27, 2014, KAYLEIGH had suffered the blunt force trauma blow to her abdomen that would lead to her death.  Although she had multiple blunt force injuries to her abdomen, one was with so much force it caused hemorrhage to the front of her lumbar spine and another was so forceful that it tore a hole in her small intestine, causing stool to leak into the sterile area of her abdomen, the peritoneum, and become infected.

48.    Immediately upon suffering the abdominal trauma, Kayleigh would have been "clearly and demonstrably ill" according to child abuse pediatrician James Crawford-Jakubiak, M.D., who is the director of the child abuse pediatrics center at Oakland Children's Hospital and testified in the preliminary hearing.

49.    Both Joseph I. Cohen, M.D. -- the pathologist who performed the autopsy on KAYLEIGH -- and Dr. Crawford-Jakubiak confirmed that the small intestine injury to KAYLEIGH would have been immediately extremely painful.

50.    Then when the infectious peritonitis developed, KAYLEIGH would have been in even more, "agonizing" and "excruciating" pain.

51.    As the infection wore on, it caused extremely painful necrosis – death – of twelve inches of KAYLEIGH'S small intestine, and KAYLEIGH would have been "in agony."

52.     Both physicians confirmed that the small intestine injury and infection were survivable, if KAYLEIGH had received medical attention.

53.     The fatal abdominal injury was present for four or more days before KAYLEIGH died, and she would have survived if she had received medical attention.

54.     Defendant Officers CHAMBERS and GARRETT SMITH saw KAYLEIGH in this grave and life-threatening medical condition with obvious signs of abuse and did not question her, examine her, conduct any child abuse investigation, report the suspected abuse to anyone, take KAYLEIGH into protective custody, or obtain necessary medical care for her, despite their mandatory duties under law and applicable standards to do all of those.  No reasonable officer would have failed to examine and question KAYLEIGH, conduct a thorough child abuse investigation, immediately report the suspected abuse to CWS and other officials, take KAYLEIGH into protective custody, or obtain emergency medical care for her.

55.     During this time, even neighbors had noticed KAYLEIGH, who was normally a happy and playful child who often played outside, had now become withdrawn, sullen, and had developed dark circles under her eyes, and was rarely allowed outside.

56.     Also on or about January 27, 2014, Plaintiff ROBIN SLUSHER contacted Napa County CWS by phone and reported to Defendant CWS Workers DIAZ-LARA and LEFLER-PANELA that there had been a CWS dependency case open for KAYLEIGH in the past, and that Ms. Krueger and her boyfriend were using drugs, which Ms. Slusher believed to be crank or crack, in the home.  ROBIN SLUSHER further informed Defendants DIAZ-LARA and LEFLER-PANELA that the drugs were accessible to KAYLEIGH, that Ms. Krueger and her boyfriend were intentionally depriving KAYLEIGH of food, that KAYLEIGH had lost weight, there was a lot of traffic in and out of the home, and there was a warrant for the arrest of Ms. Krueger's boyfriend.

57.     Shortly thereafter, Defendant LEFLER-PANELA called ROBIN SLUSHER back and said there was nothing CWS could do, and told Ms. Slusher she could call the police instead.

58.     At all relevant times, Defendants LEFLER-PANELA and DIAZ-LARA were mandated reporters, including under California Penal Code § 11165.7.

59.     Defendants LEFLER-PANELA and DIAZ-LARA had the mandatory duties to respond, investigate and/or report the abuse and/or severe neglect under California law, including California Penal Code §§ 11165.9 and 11166, California Welfare and Institutions Code §§ 328, 10553, 10554, 16501, 16504, and California Department of Social Services Child Welfare Services Regulations §§ 31-100, 31-101, 31-105, 31-110, 31-115, 31-120, 31-125, 31-130, and 31-501. These mandatory duties include, but are not limited to:

a)    The duty to report suspected child abuse or neglect to the police or sheriff's department (P.C. §§ 11165.9 and 11166(j); DSS Regulations Ch. 31-501);

b)    The duty to immediately refer the case by telephone, fax, or electronic transmission to an agency with proper jurisdiction, if the agency that takes a report lacks jurisdiction (P.C. §11165.9);

c)    The duty to make "an initial report by telephone to the police or sheriff's department as soon as is practicably possible," and to "prepare and send, fax, or electronically transmit a written follow-up report within 36 hours of receiving the information" concerning the abuse and/or neglect (P.C. §11166(a));

d)    The duty to "immediately make any investigation he or she deems necessary to determine whether child welfare services should be offered to the family and whether proceedings in the juvenile court should be commenced" (W&I §328);

e)    The duty to "respond to any report of imminent danger to a child immediately" (W&I §16501(f));

f)    The duty to make "an immediate in-person response" in "emergency situations" (W&I §16504(a));

g)    The duty to "respond to all referrals for service which allege that a child is endangered by abuse, neglect, or exploitation" (DSS Regulations Ch. 31-101.1);

h)    The duty to "immediately initiate and complete the Emergency Response Protocol process" and to "record all available and appropriate information on the Emergency Response Protocol Form" (DSS Regulations Ch. 31-105);

i)   The duty to conduct an in-person immediate investigation when the "emergency response protocol indicates the existence of a situation in which imminent danger to a child, such as physical pain, injury, disability, severe emotional harm or death, is likely" (DSS Regulations Ch. 31-115);

j)   The duty to request law enforcement assistance where "the physical safety of family members. . .is endangered" (DSS Regulations Ch. 31-130);

k)   Other duties as provided by law and regulations.

60.   Despite the fact that Defendants LEFLER-PANELA and/or DIAZ-LARA knew, had reason to know and/or reasonably suspected that Kayleigh was suffering child abuse, severe neglect, and an emergency situation, with deliberate indifference to the rights and safety of KAYLEIGH SLUSHER, they violated their mandatory duties to respond, investigate and/or report the abuse and/or neglect as required by law, including but not limited to California Penal Code §§ 11165.9 and 11166, California Welfare and Institutions Code §§ 328, 10553, 10554, 16501, 16504, and California Department of Social Services Child Welfare Services Regulations §§ 31-100, 31-101, 31-105, 31-110, 31-115, 31-120, 31-125, 31-130, and 31-501.

61.   Further, Defendants LEFLER-PANELA and/or DIAZ-LARA, with deliberate indifference to the rights and safety of KAYLEIGH SLUSHER, failed to accept reports of suspected child abuse and/or severe neglect without legal justification and did not properly maintain a record of all reports received as mandated by Penal Code § 11165.9.

62.   Defendants LEFLER-PANELA and/or DIAZ-LARA, with deliberate indifference to the rights and safety of KAYLEIGH SLUSHER, wrongfully delivered child protective services by failing to conduct an assessment and develop a case plan as mandated by DSS Regulations §§ 31-201, 31-205, 31-206 and/or Welfare and Institutions Code §16501.1.

63.   Even though Defendants LEFLER-PANELA, DIAZ-LARA and/or DOE CWS Workers received reports of abuse and/or severe neglect, with deliberate indifference to the rights and safety of KAYLEIGH SLUSHER, they violated their mandatory duties by choosing not

conduct a basic evaluation of risks to determine whether an emergency situation existed as mandated by Welfare and Institutions Code § § 16504 and/or DSS Regulations § § 31-101, 31-105, 31-110, 31-115, 31-120 and/or 31-128.

64.    Even though Defendants LEFLER-PANELA, DIAZ-LARA and/or DOE CWS Workers received reports of abuse and/or severe neglect, with deliberate indifference to the rights and safety of KAYLEIGH SLUSHER, they violated their mandatory duties by choosing not to control the conduct of Ryan Warner and/or Sara Krueger, and/or otherwise protect Kayleigh as mandated by Welfare and Institutions Code § § 16501 and 16504.

65.    With deliberate indifference to the rights and safety of KAYLEIGH SLUSHER, Defendants LEFLER-PANELA and/or DIAZ-LARA violated their duties as mandated reporters to report suspected child abuse and/or severe neglect to appropriate authorities and to make initial reports or follow up reports within 36 hours of receiving said reports of abuse and/or severe neglect as mandated by Penal Code § § 11165.9 and 11166(a).  Rather, Defendants told Plaintiff ROBIN SLUSHER she could call the police instead.

66.    On or about January 29, 2014, around 5:58 p.m., Plaintiff ROBIN SLUSHER again contacted the Napa Police Department to inform them that her granddaughter was in grave danger, and to request police assistance.  The NPD again dispatched Defendant WADE, this time to do a welfare check, for Kayleigh's benefit, at Kayleigh's home, located at 2060 Wilkins Avenue, Apt. 7. Defendant WADE spoke with Plaintiff ROBIN SLUSHER on the telephone, who told Defendant WADE that Kayleigh was in immediate physical danger due to Mr. Warner's and Ms. Krueger's illegal drug use in the home, their failure to provide food and care to Kayleigh, and possible physical violence against Kayleigh.  Plaintiff ROBIN SLUSHER told Defendant WADE that she had not been allowed to talk with her granddaughter, Kayleigh, since approximately Thanksgiving; that she believed Kayleigh's mother, Ms. Krueger, was using drugs and allowing others to use drugs

1    in Kayleigh's home, possibly crack cocaine or "crank" (methamphetamine); that Kayleigh was not

2    being fed; and that when she has attempted to check on or see her granddaughter, Ms. Krueger has

3    refused and told her that Kayleigh has been sick since Thanksgiving.

4            67.    On information and belief, Defendant WADE requested Defendant NPD Officer

5    DEGUILIO to act as his cover officer, and the two Defendant officers visited Kayleigh's residence

6    on or about January 29, 2014, around 8:47 p.m.  On information and belief, the following facts in

7    this paragraph occurred at that time.  Ms. Krueger refused Defendants permission to enter the home

8    to perform a welfare check on Kayleigh, and Defendants were aware that Ms. Krueger actively tried

9    to conceal the inside of her home from the officers by closing the front door against her body and

10   peeking her head out to talk to them.  During that visit, Ms. Krueger brought Kayleigh to the front

11   door and Defendants WADE and DEGUILIO observed the large and multiple bruises on Kayleigh's

12   face described above.  Defendants could not see the rest of Kayleigh's body, including her arms and

13   legs, which were covered by her clothes.  Defendants did nothing to investigate whether Kayleigh

14   had injuries that were covered by her clothes.  Defendants were able to observe a man walk out of a

15   back bedroom and look very surprised to see the officers there.  Defendants saw that that man

16   appeared to be very malnourished, with sunken cheekbones, and appeared to be a drug user.  That

17   man told Defendants his name was "Ryan Howard," and that he did not have, and he could not find,

18   any identification.  Defendants ran a records check on "Ryan Howard," and dispatch was unable to

19   locate any match.  Defendants later learned that the man who claimed to be "Ryan Howard" was

20   actually "Ryan Warner."  When Defendants first encountered Ryan "Howard" (Warner) at

21   Kayleigh's home, Defendants determined that he was under the influence of a controlled substance,

22   based on their training and experience due to his appearance and obvious symptoms of drug

23   intoxication.  Ryan Warner admitted to Defendants that he had used marijuana and Ms. Krueger's

24   prescription pain medication that day, without a prescription for it.  Defendants entered the

residence.  Defendants did not search the residence, nor did Defendants observe every room, or whether or not there were weapons or illegal drugs, or whether there was sufficient food for Kayleigh.  While Defendants were there, another man walked out of a back bedroom, whom Defendants recognized from past contacts as Allen Epperson, a well-known methamphetamine addict who was currently on probation.  Mr. Epperson attempted to quickly leave the residence, and Defendants detained him for a probation search.  While Kayleigh was sitting on Ms. Krueger's lap on a couch, Defendants saw Kayleigh vomit, which was caused by the infectious peritonitis and necrotic small intestine that was killing her.  Ms. Krueger stated that Kayleigh had the flu, and immediately took Kayleigh into the bathroom, away from the officers.  Defendants WADE and DEGUILIO also observed that Kayleigh appeared gaunt, sick, malnourished, and distressed, with the dark circles under her eyes that her neighbors had recently noticed.  Defendants did not attempt to speak with Kayleigh.  Ms. Krueger asked Defendants to leave, and Defendants left.  Defendant WADE later determined that the man claiming to be "Ryan Howard" had lied to them about his identity, and that he was actually Ryan Warner.  On information and belief, Defendants WADE and DEGUILIO also confirmed that there was an active arrest warrant for Ryan Warner and/or legal cause for his immediate arrest.  Defendants made no effort to obtain a warrant to re-enter Kayleigh's home, search Kayleigh's home, or arrest anyone in Kayleigh's home.  One of the Defendants briefly escorted Ryan Warner away from the apartment, but he was allowed to return after Defendants left.  Defendant WADE then called Plaintiff ROBIN SLUSHER, and told her that everything appeared normal at Kayleigh's home, and that Kayleigh had food.  Defendant WADE also promised and reassured Plaintiff ROBIN SLUSHER that he would "keep an eye on the apartment."

   68. At the time of their investigation on January 29, 2014, Defendants WADE and DEGUILIO saw that KAYLEIGH had the above-described severe and multiple bruises, including a

4" bruise on her forehead and another bruise on her left temple. She would have appeared to them as an "extremely sick" child, "in agony" from the infectious peritonitis and necrotic bowel.

69.     Even Allen Epperson, the known methamphetamine addict who was at KAYLEIGH'S home at the same time as Defendant Officers WADE and DEGUILIO on January 29, 2014, noted and later informed police that KAYLEIGH was sallow, hollow and sick looking with bruises on her face at that time.

70.     According to generally accepted police practices and training, police officers are trained they must interview and examine a child who is a possible abuse victim outside the presence of her caregivers because children are often afraid to speak of abuse in the presence of their caregivers, and officers must inspect the child's body for evidence of abuse. If Defendants had followed generally accepted police practices and training, they would have interviewed and examined KAYLEIGH outside the presence of her mother and Ryan Warner, and would have been required immediately to take her into protective custody and obtain immediate medical treatment for her, which would have saved her life.

71.     Defendant Officers WADE and DEGUILIO saw KAYLEIGH in this grave and life-threatening medical condition with obvious signs of abuse and did not question her, examine her, conduct any child abuse investigation, report the suspected abuse to anyone, take KAYLEIGH into protective custody, or obtain necessary medical care for her, despite their mandatory duties under law and applicable standards to do all of those things. No reasonable officer would have failed to examine and question KAYLEIGH, conduct a thorough child abuse investigation, immediately report the suspected abuse to CWS and other officials, take KAYLEIGH into protective custody, or obtain emergency medical care for her.

72.     If Defendants had followed generally accepted police practices and training, Defendants would have discovered Ryan Warner had an extensive criminal history including but

not limited to, upon information and belief, assault and possession of drugs, and he had a restraining order entered against him for threatening to kill his pregnant ex-girlfriend, including telling her for example, "I hope the kid dies or is born retarded," "snitches get dealt with," "You'll get what's coming to you," "I hope you and it die in the process," "I've been on the run many times," "I will scalp you," "I'll bust your teeth out with a pipe like mine were," and the woman was "not worthy of having" his child.

73.     Plaintiffs are informed and believe and thereon allege that Defendant WADE violated his promise to ROBIN SLUSHER, and never went back to the apartment before Kayleigh died.  On information and belief, Defendant WADE also did not ask any other member of the NPD to monitor the apartment or report the incident to any other officer, CWS or any other party.

74.     At all relevant times, Defendants WADE, DEGUILIO, CHAMBERS and SMITH were Mandated Reporters under the California Child Abuse and Neglect Reporting Act ("CANRA").  On information and belief, Defendants WADE, DEGUILIO, CHAMBERS and SMITH violated their mandatory duties to investigate and/or report the abuse and neglect as required by California Penal Code § § 11164 *et seq*, 11165.9, and 11166, despite knowing, having reason to know and/or reasonably suspecting that Kayleigh was suffering severe and sustained child abuse and neglect.  Neither Defendants WADE, DEGUILIO, CHAMBERS nor or SMITH ever made any report of suspected child abuse and/or neglect in relation to Kayleigh to Napa County CWS or any other agency or authority.

75.     No Defendant officer ever conducted the child abuse investigation required of them by generally accepted police training, practices, and procedures, including interviewing and examining KAYLEIGH outside the presence of her mother.  No Defendant officer ever took KAYLEIGH into protective custody or procured emergency medical treatment for her, as required by generally accepted police training, practices, and procedures and their mandatory duties.  No

Defendant officer made an immediate report of suspected child abuse to CWS as required by their mandatory duties.

76.     Plaintiffs relied on the representations of Defendants WADE and DEGUILIO that everything appeared normal with Kayleigh and at Kayleigh's home, that there was food for Kayleigh in the home, and that they would "keep an eye on the apartment."  Those representations were false.  Had Plaintiffs known the truth about what transpired during Defendants' welfare check on Kayleigh, Plaintiffs would have taken immediate action to protect Kayleigh, including making further efforts to seek protection for Kayleigh from the NPD and the Napa County CWS, contacting other authorities or child advocates for assistance, personally going to Kayleigh's home, or engaging in other self-help to try to protect Kayleigh.  Instead, Plaintiffs relied to their (and Kayleigh's) detriment on Defendants' false representations that everything appeared normal at Kayleigh's home, and that the NPD would monitor the apartment to protect Kayleigh.

77.     The Defendant Officers' failure to take KAYLEIGH into protective custody and take her to a hospital caused KAYLEIGH to die of the untreated abdominal trauma, infectious peritonitis and small intestine necrosis.

78.     The California Legislature has determined that the purpose of the child protection law "is to provide maximum safety and protection for children who are currently being physically, sexually, or emotionally abused, being neglected, or being exploited, and to ensure the safety, protection, and physical and emotional well-being of children who are at risk of that harm."  Cal. Welf. & Inst. Code § 300.2.

79.     In addition, the California Legislature has determined that "The provision of a home environment free from the negative effects of substance abuse is a necessary condition for the safety, protection and physical and emotional well-being of the child."  *Id.*

80.     All Defendants were trained that people who are using methamphetamine or other controlled substances can be violent, volatile, and are unsafe for children to be around.  All Defendants were trained that caregivers who are using methamphetamine or other controlled substances may fail to give their children necessary food, liquids, and basic necessities.

81.     Through their volitional, intentional, and deliberately indifferent acts, omissions, and misrepresentations, Defendants WADE, DEGUILIO, CHAMBERS AND SMITH affirmatively placed Kayleigh Slusher in danger, exposing her to a danger which she would not have otherwise faced, and leaving her in a situation that was more dangerous than the one in which they found her. These Defendants did so by going to KAYLEIGH's home, thereby tipping off Ryan Warner and Sara Krueger that police were monitoring them and interested in them, while at the same time violating their mandatory duties as described above, and causing Ryan Warner and Sara Krueger to conceal KAYLEIGH within their apartment and to not seek medical care for KAYLEIGH – including taking KAYLEIGH to a hospital – for fear that police would arrest them, or would remove KAYLEIGH from them, if they (Ryan and Sara) did anything so conspicuous.

82.     Leaving KAYLEIGH in a highly abusive home, and denying her the necessary life-saving medical care and protective custody she needed, was extremely coercive.

83.     If Defendants had complied with their mandatory duties, the mandatory outcomes included immediately and thoroughly conducting an emergency investigation of child abuse, immediately reporting the abuse to CWS, the police, sheriff and other law enforcement, examining and questioning KAYLEIGH outside the presence of her caregivers, immediately taking KAYLEIGH into protective custody, and immediately taking KAYLEIGH to the emergency room for the life-saving emergency medical treatment KAYLEIGH needed.

84. Both Doctors Cohen and Crawford-Jakubiak confirmed that KAYLEIGH was likely to survive the abdominal injuries, infection, and necrotic bowel if she had received medical attention, including surgical repair of the small intestine and antibiotic treatment for the infection.

85. On or about February 1, 2014, NPD Officers responded to a call to do another welfare check at Kayleigh's home. When NPD Officers arrived there, they discovered Kayleigh Slusher in her bed, deceased, with the extensive evidence of ongoing and severe child abuse described above. Although KAYLEIGH'S body was covered up to her neck with blankets, KAYLEIGH had "obvious facial injuries," and "obvious facial trauma consisting of large contusions on her fore head, face, and neck" that were in "various stages of healing." Her eyes were sunken in, "with dark bruising around her eyes." Defendants CHAMBERS, SMITH, WADE, and DEGUILIO would have observed these severe injuries on KAYLEIGH when they saw her shortly before her death, and were required to conduct a child abuse investigation and take her into protective custody and obtain life-saving medical care for her.

86. On February 1, 2014, KAYLEIGH's home was in a shambles, with dirty dishes piled in the sick and a mess all over the floors. The refrigerator was empty except for condiments and a bottle of Pedialyte.

87. The Napa County District Attorney reported that KAYLEIGH died due to multiple blunt force trauma with impact injuries to her head, torso and extremities, child abuse and neglect, and on or about April 8, 2015, added torture to the criminal allegations against Mr. Warner and Ms. Krueger. The Napa County Coroner's pathologist, Dr. Cohen, determined KAYLEIGH'S cause of death to be complications of mesenteric contusions and small intestine hematoma, due to multiple blunt impact injuries to head, torso, and extremities, due to fatal child abuse and neglect. He determined that KAYLEIGH suffered from "fatal child abuse and neglect *over time* leading to death." (Emphasis added).

88.     On exterior examination (just looking at the skin), much of KAYLEIGH's abdomen was green from the infection.  When Dr. Cohen cut into KAYLEIGH'S abdomen, 450 milliliters – about two cups – of free-flowing, bloody and infectious fluid drained out of her abdomen.  It took several days for this bloody fluid to build up.

89.     Defendants' failure to investigate and/or report the abuse and/or neglect and failure to take KAYLEIGH into protective custody and obtain emergency medical treatment for her was without legal justification, caused great pain and suffering to Plaintiffs, and caused Kayleigh Slusher's death.  These injuries, including but not limited to physical abuse, torture, neglect and death, were of the type the California Legislature intended to prevent in enacting the Child Abuse and Neglect Reporting Act, Penal Code § 11164 *et seq*., and Welfare and Institutions Code §§ 300, 305 *et seq.,* 10550, 10553, 10554, and 10651.  Additionally, Defendants' affirmative acts and omissions, including failure to investigate, report, intervene and/or protect Kayleigh Slusher from known and foreseeable harms, including physical and sexual abuse, torture and death, created danger and increased the risk of harm to Kayleigh.  Defendants further created danger and increased the risk of harm to Kayleigh, through their affirmative acts and omissions, by going to Kayleigh's home without taking any action, and by lying to Robin Slusher about Kayleigh's condition and creating a false sense of security and safety as to Plaintiffs and others who wished to protect Kayleigh from harm.   In addition, Defendants increased the risk of harm to KAYLEIGH by going to her apartment and doing nothing, which informed Ms. Krueger and Mr. Warner that the police were informed of Kayleigh's condition and caused their further avoidance of necessary medical care for KAYLEIGH.

90.     Under the Fourteenth Amendment, Plaintiff KAYLEIGH SLUSHER had a due process right to life and a liberty interest in bodily integrity and security, including a protected liberty interest and right to the non-discretionary investigation, reporting, and protection mandated

for her benefit by California law.  Plaintiffs JASON SLUSHER, ROBIN SLUSHER and BENNY SLUSHER had the right to familial relationships with Kayleigh.  Among other sources, these rights under the First and Fourteenth Amendments derive from statutory mandates as created by California law.  Investigation and/or reporting of child abuse and/or neglect is mandatory under the California Child Abuse and Neglect Reporting Act, Penal Code § 11164 *et seq*., Welfare and Institutions Code §§ 10550, 10553, 10554, and 10651, and is intended by law for the benefit and protection of children such as Kayleigh Slusher.  Such investigation and/or reporting is mandatory, ministerial, and is not discretionary under the CANRA.  Defendants unreasonably and unjustifiably violated their mandatory duties to investigate and/or report the abuse and/or neglect suffered by Kayleigh Slusher, despite Plaintiffs' statutory and constitutional entitlement to investigation and/or reporting under California law.  Defendants violated Plaintiffs' rights under the First and Fourteenth Amendments by failing to respond to, investigate and/or report child abuse and neglect as mandated by the CANRA, and to remove KAYLEIGH from her obviously abusive and dangerous home and seek emergency medical care for her, as required by generally accepted law enforcement standards and training.  As a direct result of Defendants' conduct, including conduct that increased the risk of harm to Kayleigh Slusher, and Defendants' failure to investigate and/or report child abuse and/or neglect as required by the United States Constitution and California law, Plaintiff Kayleigh Slusher suffered loss of life and liberty, and Plaintiffs JASON SLUSHER, ROBIN SLUSHER and BENNY SLUSHER suffered loss of their familial relationships with their daughter/granddaughter, including loss of love, companionship, comfort, affection, society, services, solace, and moral support.

91.	At all material times, and alternatively, the actions and omissions of each Defendant were intentional, wanton and/or willful, conscience shocking, reckless, malicious, deliberately indifferent to Plaintiffs' rights, done with actual malice, grossly negligent, negligent, and objectively unreasonable.

92.     As a direct and proximate result of each Defendant's acts and/or omissions as set

forth above, Plaintiffs sustained the following injuries and damages, past and future, among others:

> a. Wrongful death of Kayleigh Slusher (by JASON SLUSHER, pursuant to CCP 377.60 and federal civil rights law);
>
> b. Hospital and medical expenses (by JASON SLUSHER, pursuant to CCP 377.20 and federal civil rights law);
>
> c. Coroner's fees, funeral and burial expenses (by JASON SLUSHER, pursuant to CCP 377.20 and federal civil rights law);
>
> d. Loss of familial relationships, including loss of love, companionship, comfort, affection, society, services, solace, and moral support (by all Plaintiffs, pursuant to CCP 377.60 and/or federal civil rights law);
>
> e. Pain and suffering and emotional distress (by all Plaintiffs, pursuant to federal civil rights law);
>
> f. Violation of constitutional rights (by all Plaintiffs, pursuant to federal civil rights law);
>
> g. Kayleigh Slusher's loss of life (by JASON SLUSHER pursuant to federal civil rights law);
>
> h. Kayleigh Slusher's conscious pain and suffering (by JASON SLUSHER pursuant to federal civil rights law);
>
> i. All damages and penalties recoverable under 42 U.S.C. §§ 1983, 1988, California Civil Code §§ 52 and 52.1, California Code of Civil Procedure §1021.5, and as otherwise allowed under California and United States statutes, codes, and common law.

93.     Plaintiff JASON SLUSHER, and the Estate of Kayleigh Slusher, Deceased, who

bring state law claims herein, timely and properly filed tort claims pursuant to Cal. Gov. Code § 910

et seq., and for all Plaintiffs this action is timely filed within all applicable statutes of limitation.

**COUNT ONE**
**-- 42 U.S.C. §1983 --**
**ALL PLAINTIFFS AGAINST DEFENDANTS WADE, DEGUILIO, CHAMBERS, SMITH,**
**LEFLER-PANELA, DIAZ-LARA and DOES 1-50**

94.     Plaintiffs reallege each and every paragraph in this complaint as if fully set forth here.

95.     By the actions and omissions described above, Defendants violated 42 U.S.C. §1983, depriving Plaintiffs of the following clearly established and well-settled constitutional rights protected by the United States Constitution:

    a.   The right to be free from deprivation of life and liberty, and interference with bodily integrity and security, as protected by the substantive and procedural provisions of the Due Process Clause of the Fourteenth Amendment;

    b.   The right to bodily integrity and security with the liberty interests created for Plaintiffs' benefit and protection by state law, including mandatory duties to report, investigate, and protect children from child abuse and/or neglect, to which entitlement was created statutorily by the Child Abuse and Neglect Reporting Act, Penal Code § 11164 *et seq*., Welfare and Institutions Code §§ 10550, 10553, 10554, and 10651, generally accepted law enforcement standards, and other mandatory authority cited herein, as protected by the Due Process Clause of the Fourteenth Amendment;

    c.   The right to be free from wrongful governmental interference with familial relationships as secured by the First and Fourteenth Amendments and California Code of Civil Procedure § § 377.20 et seq. and 377.60 et seq.

96.     Defendants subjected Plaintiffs to their wrongful conduct, depriving Plaintiffs of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Plaintiffs would be violated by their acts and/or omissions.

97.     As a direct and proximate result of Defendants' acts and/or omissions as set forth above, Plaintiffs sustained injuries and damages as set forth at ¶ 92, above.

98.     The conduct of Defendants entitles Plaintiffs to punitive damages and penalties allowable under 42 U.S.C. §1983 and California law.  Plaintiffs do not seek punitive damages against Defendant public entities.

1    99.    Plaintiffs are also entitled to reasonable costs and attorneys' fees under 42 U.S.C.

2  §1988 and applicable California codes and laws.

**COUNT TWO**
**- 42 U.S.C. §1983 (*Monell*)–**
**ALL PLAINTIFFS AGAINST DEFENDANTS CITY OF NAPA, and COUNTY OF NAPA**

100.    Plaintiffs reallege each and every paragraph in this complaint as if fully set forth
here.

101.    On information and belief, the unconstitutional actions and/or omissions of
DEFENDANTS WADE, DEGUILIO, CHAMBERS, SMITH and DOES 1-25 were pursuant to the
following customs, policies, practices, and/or procedures of the CITY OF NAPA, which were
directed, encouraged, allowed, and/or ratified by policy making officers for the CITY OF NAPA,
the NAPA POLICE DEPARTMENT:

a.    To tolerate and permit the violation of mandatory duties to report and/or
investigate and/or take other mandatory action in response to reports of child
abuse and/or neglect (including those specific mandatory duties and
outcomes described herein);

b.    To fail to use and require appropriate and generally accepted law
enforcement procedures and training in handling child abuse and/or neglect
reports and investigations;

c.    To cover-up violations of constitutional rights by any or all of the following:

i.    by failing to properly investigate and/or evaluate complaints or incidents
of failure to report and/or investigate reports of child abuse and/or
neglect;

ii.    by ignoring and/or failing to properly and adequately investigate and
discipline unconstitutional or unlawful police activity; and

iii.    by allowing, tolerating, and/or encouraging police officers to: fail to file
complete and accurate police reports; file false reports; make false
statements; intimidate, bias and/or "coach" witnesses to give false
information and/or to attempt to bolster officers' stories; and/or obstruct
or interfere with investigations of unconstitutional or unlawful conduct,
by withholding and/or concealing material information;

d.  To allow, tolerate, and/or encourage a "code of silence" among law enforcement officers and police department personnel, whereby an officer or member of the department does not provide adverse information against a fellow officer or member of the department; and,

e.  To fail to institute, require, and enforce necessary, appropriate and lawful policies, procedures, and training programs to prevent or correct the unconstitutional conduct, customs, and practices and procedures described in this Complaint and in paragraphs (a) through (d), with deliberate indifference to the rights and safety of Plaintiffs and the public, and in the face of an obvious need for such policies, procedures, and training programs; and

f.  To use or tolerate inadequate, deficient, and improper procedures for handling, investigating, and reviewing complaints of officer and/or employee misconduct made under California Government Code § 910 et seq.

102.  On information and belief, the unconstitutional actions and/or omissions of DEFENDANTS LEFLER-PANELA, DIAZ-LARA and DOES 26-50 were pursuant to the following customs, policies, practices, and/or procedures of the COUNTY OF NAPA, which were directed, encouraged, allowed, and/or ratified by policy making officers for the COUNTY OF NAPA, and/or NAPA CHILD WELFARE SERVICES:

a.  To tolerate and permit the violation of mandatory duties to report and/or investigate and/or take other mandatory action in response to reports of child abuse and/or neglect (including those specific mandatory duties and outcomes described herein);

b.  To fail to use and require appropriate and generally accepted child welfare services policies, procedures, and training in handling child abuse and/or neglect reports and investigations, including where removal of an abused and/or neglected child and the provision of necessary, life-saving medical care for the child, is required by generally accepted standards;

c.  To fail to institute, require, and enforce necessary, appropriate and lawful policies, procedures, and training programs to prevent or correct the unconstitutional conduct, customs, and practices and procedures described in this Complaint and in paragraphs (a) through (b), with deliberate indifference to the rights and safety of Plaintiffs and the public, and in the face of an obvious need for such policies, procedures, and training programs; and

d.  To use or tolerate inadequate, deficient, and improper procedures for handling, investigating, and reviewing complaints of officer and/or employee misconduct made under California Government Code § 910 et seq.

103.     Defendants CITY OF NAPA, COUNTY OF NAPA, and DOES 1–50 failed to properly hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline Defendants, due to their programmatic failures in the face of the obvious need for constitutional hiring, training, instruction, monitoring, supervision, evaluation, investigation, and discipline of their employees and agents, including Defendants, with deliberate indifference to Plaintiffs' constitutional rights, which were thereby violated as described above.  Further, Defendants' violation of mandatory duties, standards, and of Plaintiffs' rights, were so obvious and shocking, and the facts of this case have received such widespread media and public attention, that supervisors and policy-makers for the CITY and COUNTY, respectively, must have known of these egregious violations of law, standards, and training, and on information and belief have decided to ratify and endorse the conduct of the Defendants in this matter who are under their supervision and control.  On information and belief, discovery will reveal that the CITY's and COUNTY's constitutionally deficient programs for hiring, training, instruction, monitoring, supervision, evaluation, investigation, and discipline of their employees and agents, including Defendants, directly led to the egregious violations of mandatory duties, standards, and Plaintiffs' rights described herein.

104.     The unconstitutional actions and/or omissions of Defendants, as described above, were approved, tolerated and/or ratified by policy-making officers for the NAPA POLICE DEPARTMENT and COUNTY OF NAPA CHILD WELFARE SERVICES.  Plaintiffs are informed and believe, and thereupon allege, that the details of this incident have been revealed to the authorized policy makers within the CITY OF NAPA and the COUNTY OF NAPA, including DOES 1–50, and Plaintiffs are further informed and believe, and thereupon allege, that such policy makers have direct knowledge of the facts alleged in this complaint.  Notwithstanding this knowledge, the authorized policy makers within the CITY OF NAPA and the COUNTY OF NAPA have approved of the conduct of Defendants, and have made a deliberate choice to endorse the

1   decisions of those defendant officers and employees and the basis for those decisions.  By doing so,

2   the authorized policy makers of the CITY OF NAPA and the COUNTY OF NAPA have shown

3   affirmative agreement with each individual Defendant officer's and employee's actions, and have

4   ratified the unconstitutional acts of the individual Defendants.

5   105.    The aforementioned customs, policies, practices, and procedures, the failures to

6   properly and adequately hire, train, instruct, monitor, supervise, evaluate, investigate, and

7   discipline, as well as the unconstitutional orders, approvals, ratification and toleration of wrongful

8   conduct of Defendants CITY OF NAPA, COUNTY OF NAPA, and DOES 1–50 were a moving

9   force and/or a proximate cause of the deprivations of Plaintiffs' clearly established and well-settled

10   constitutional rights in violation of 42 U.S.C. §1983, as more fully set forth in ¶ 95, above.

11   106.    Defendants subjected Plaintiffs to their wrongful conduct, depriving Plaintiffs of

12   rights described herein, knowingly, maliciously, and with conscious and reckless disregard for

13   whether the rights and safety of Plaintiffs and others would be violated by their acts and/or

14   omissions.

15   107.    As a direct and proximate result of the unconstitutional actions, omissions, customs,

16   policies, practices and procedures of Defendants as described above, Plaintiffs sustained serious

17   injuries and are entitled to damages, penalties, costs and attorney fees as set forth in ¶¶ 92 and 97-

18   99, above, including punitive damages against DOES 1–50, in their individual capacities.

**COUNT THREE
-- VIOLATION OF CIVIL CODE §52.1 --
PLAINTIFFS KAYLEIGH SLUSHER, DECEASED, AND JASON SLUSHER AGAINST
DEFENDANTS WADE, DEGUILIO, CHAMBERS, SMITH, LEFLER-PANELA, DIAZ-
LARA, DOES 1-50, CITY OF NAPA AND COUNTY OF NAPA**

108.    Plaintiffs reallege each and every paragraph in this complaint as if fully set forth

here.

109.   By their acts, omissions, customs, and policies, each Defendant, acting in concert/conspiracy, as described above, violated KAYLEIGH SLUSHER'S rights under California Civil Code §52.1, and the following clearly-established rights under the United States Constitution and the California Constitution:

a.   The right to be free from deprivation of life and liberty, and interference with bodily integrity and security, as protected by the substantive and procedural provisions of the Due Process Clauses of the Fourteenth Amendment of the United States Constitution and Art. 1, Sec. 7 of the California Constitution;

b.   The right to bodily integrity and security with the liberty interest created for Plaintiffs' benefit and protection by state law, including mandatory duties to report, investigate, and protect children from child abuse and/or neglect, to which entitlement was created statutorily by the Child Abuse and Neglect Reporting Act, Penal Code § 11164 *et seq*., Welfare and Institutions Code §§ 10550, 10553, 10554, and 10651, and other mandatory authority cited herein, as  protected by the Due Process Clauses of the Fourteenth Amendment of the United States Constitution and Art. 1, Sec. 7 of the California Constitution;

c.   The right to be free from wrongful governmental interference with familial relationships as secured by the First and Fourteenth Amendments of the United States Constitution, Art. 1, Secs. 1 and 7 of the California Constitution, and California Code of Civil Procedure § § 377.20 et seq. and 377.60 et seq.;

d.   The right to enjoy and defend life and liberty, acquire, possess and protect property, and pursue and obtain safety, happiness and privacy, as secured by the California Constitution, Article 1, Section 1;

e.   The right to protection from bodily restraint, harm, or personal insult, as secured by Cal. Civil Code § 43.

110.   Defendants' violation of Plaintiffs' due process rights through their own intentional and volitional conduct, and with deliberate indifference to the rights and safety of Plaintiffs and KAYLEIGH SLUSHER, in and of itself constitutes threat, intimidation, or coercion under the Bane Act as interpreted by courts within the Ninth Circuit Court of Appeals.  Separate from, and above and beyond, Defendants' attempted interference, interference with, and violation of Plaintiffs'

1  rights, Defendants violated Plaintiffs' rights by the following conduct constituting threat,

2  intimidation, or coercion:

   a.   Intentionally, or with deliberate indifference, and without legal justification, violating mandatory duties to investigate and/or report child abuse and/or neglect as required by California Child Abuse and Neglect Reporting Act, Penal Code § 11164 *et seq.*, Welfare and Institutions Code §§ 10550, 10553, 10554, and 10651.

   b.   Intentionally, or with deliberate indifference, and without legal justification, depriving Kayleigh Slusher of necessary, protective custody and life-saving measures mandated by law for her protection;

   c.   Intentionally, or with deliberate indifference, and without legal justification, affirmatively placing Kayleigh Slusher in danger, exposing her to a danger which she would not have otherwise faced, and leaving her in a situation that was more dangerous than the one in which they found her;

   d.   By going to Kayleigh Slusher's home, then violating their mandatory duties described herein, affirmatively increasing her risk of harm, through their conduct and misrepresentations preventing others from coming to her aid and rescue, and through their conduct causing Ryan Warner and Sarah Krueger to further conceal KAYLEIGH, and KAYLEIGH's life-threatening injuries, within their apartment, and because of apparent police monitoring, to not take KAYLEIGH outside for necessary medical treatment;

   e.   Intentionally, or with deliberate indifference, and without legal justification, causing Kayleigh Slusher to remain in an abusive and deadly household, including known drug abuse, criminal activity, physical abuse and injury, starvation, torture and cruelty, while foreclosing other, more caring, sources of hope and rescue.

   111.   As a direct and proximate result of Defendants' violation of California Civil Code §52.1 and of Plaintiffs' rights under the United States and California Constitutions, Plaintiffs sustained injuries and damages, and against each and every Defendant are entitled to relief as set forth above at ¶¶ 92 and 97-99, including all damages allowed by California Civil Code §§ 52, 52.1, and California law, not limited to three times actual damages, costs, attorneys' fees, and civil penalties.  For this claim, the Defendants City of Napa and County of Napa are vicariously liable for the conduct of their employees and agents pursuant to Cal. Gov. Code § 815.2.

1

2

**COUNT FOUR**
3
**-- NEGLIGENCE AND NEGLIGENCE PER SE; PERSONAL INJURIES --**
**PLAINTIFFS KAYLEIGH SLUSHER, DECEASED, AND JASON SLUSHER AGAINST**
4
**ALL DEFENDANTS**

5          112.     Plaintiffs reallege each and every paragraph in this complaint as if fully set forth

6   here.

7          113.     At all times, each Defendant owed Plaintiffs KAYLEIGH SLUSHER, Deceased, and

8   JASON SLUSHER the duty to act with due care in the execution and enforcement of any right, law,

9   or legal obligation.

10
           114.     At all times, each Defendant owed Plaintiffs the duty to act with reasonable care.
11
    Furthermore, Defendants owed the mandatory duties to respond, investigate and/or report child
12
    abuse and/or neglect as required by law, including the California Child Abuse and Neglect
13
    Reporting Act, Penal Code § 11164 *et seq*., Welfare and Institutions Code §§ 10550, 10553, 10554,
14
    and 10651 California Penal Code §§ 11165.9 and 11166, and by California Department of Social
15
    Services Child Welfare Services Regulations §§ 31-100, 31-105, 31-110, 31-115, 31-120, 31-125,
16
    31-130, and 31-501.  Defendants further owed Plaintiffs the duty to take Kayleigh into immediate
17
    protective custody and obtain emergency medical treatment for her.
18
           115.     The injuries suffered by Plaintiffs, including but not limited to sustained and severe
19
    physical abuse, neglect, death, loss of familial relationships and emotional distress were of the type
20
    the California Legislature intended to prevent in enacting the Child Abuse and Neglect Reporting
21
    Act, Penal Code § 11164 *et seq*., Welfare and Institutions Code §§ 300 *et seq*., 305, 10550, 10553,
22
    10554, and 10651, and were of the type the California Department of Social Services Child Welfare
23
    Services intended to prevent in enacting Regulations §§ 31-100, 31-105, 31-110, 31-115, 31-120,
24
    31-125, 31-130, and 31-501.
25

26

27

28

116. Additionally, the general duties of reasonable care and due care owed to Plaintiffs by Defendants CITY OF NAPA and COUNTY OF NAPA, through their employees and agents, include but are not limited to the following specific obligations:

     a. to properly and adequately hire, investigate, train, supervise, monitor, evaluate, and discipline their employees, agents, and/or law enforcement officers to ensure that those employees/agents/officers act at all times in the public interest and in conformance with law;

     b. to make, enforce, and at all times act in conformance with policies and customs that are lawful and protective of individual rights, including Plaintiffs';

     c. to refrain from making, enforcing, and/or tolerating the wrongful policies and customs set forth at ¶¶ 101-102, above.

117. All Defendants, through their acts and omissions, breached each and every one of the aforementioned duties owed to Plaintiffs.

118. Defendants' breaches of law, standards, and mandatory duties set forth herein also constitute negligence per se.

119. Defendants CITY OF NAPA and COUNTY OF NAPA are vicariously liable for the conduct of their employees and agents pursuant to Cal. Gov. Code § 815.2, and for their employees' breach of mandatory duties under Cal. Gov. Code § 815.6.

120. As a direct and proximate result of Defendants' negligence, Plaintiffs sustained injuries and damages, and against each and every Defendant are entitled to relief as set forth above at ¶¶ 92 and 97-99, including punitive damages against all Defendant law enforcement officers and Defendant CWS workers under California law.

WHEREFORE, Plaintiffs respectfully request the following relief against each and every Defendant herein, jointly and severally:

     a. compensatory and exemplary damages in an amount according to proof and which is fair, just and reasonable;

1

2        b.     punitive damages under 42 U.S.C. §1983 and California law in an amount according to proof and which is fair, just, and reasonable (punitive damages

3               are not sought against the City of Napa or the County of Napa);

4        c.     all other damages, penalties, costs, interest, and attorneys' fees as allowed by 42 U.S.C. §§ 1983, 1988; Cal. Code Civ. Proc. § 1021.5, Cal. Civil Code §§

5               52 et seq., 52.1, and as otherwise may be allowed by California and/or federal

6               law;

7        d.     Injunctive relief, including but not limited to the following:

8             i.     an order requiring Defendants to institute and enforce appropriate and lawful policies and procedures for

9                    complying with mandatory duties for handling reports and investigations of child abuse and/or neglect;

10

11           ii.    an order prohibiting Defendants and their law enforcement officers from engaging in the "code of

12                 silence" as may be supported by the evidence in this case;

13           iii.   an order requiring Defendants to train their law enforcement officers concerning generally accepted and

14                 proper tactics and procedures for handling reports and investigations of child abuse and/or neglect and this

15                 Court's orders concerning the issues raised in injunctive

16                 relief requests i-ii, above;

17        e.     such other and further relief as this Court may deem appropriate.

18

19                            **JURY DEMAND**

20

21    Plaintiffs hereby request a trial by jury.

22

23 DATED: January 7, 2015           HADDAD & SHERWIN LLP

24

25                        /s/ _Julia Sherwin_____

26                        JULIA SHERWIN
                           Attorneys for Plaintiffs

27

28