MICHAEL J. HADDAD (State Bar No. 189114)
JULIA SHERWIN (State Bar No. 189268)
T. KENNEDY HELM (State Bar No. 282319)
MAYA SORENSEN (State Bar No. 250722)
HADDAD & SHERWIN LLP
505 Seventeenth Street
Oakland, California  94612
Telephone: (510) 452-5500
Facsimile:   (510) 452-5510

Attorneys for Plaintiffs
KAYLEIGH SLUSHER, Dec., JASON SLUSHER,
ROBIN SLUSHER and BENNY SLUSHER

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

KAYLEIGH SLUSHER, Deceased, THROUGH
HER SUCCESSOR IN INTEREST JASON
SLUSHER; JASON SLUSHER, Individually;
ROBIN SLUSHER, Individually; and BENNY
SLUSHER, Individually,

        Plaintiffs,

vs.

CITY OF NAPA, a public entity; NAPA POLICE
OFFICER GARRETT WADE, Individually;
NAPA POLICE OFFICER DOMINIC DEGUILIO,
Individually; NAPA CHIEF OF POLICE
RICHARD MELTON, Individually and in his
Official Capacity; COUNTY OF NAPA, a public
entity; NAPA COUNTY CHILD WELFARE
SERVICES SOCIAL WORKER NANCY
LEFLER, Individually; NAPA COUNTY CHILD
WELFARE SERVICES WORKER ROCIO
DIAZ-LARA, Individually; and DOES 1–50,
Jointly and Severally

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 4:15-cv-02394-SBA

Hon. Saundra Brown Armstrong

**PLAINTIFFS' RESPONSE IN
OPPOSITION TO DEFENDANTS'
CITY OF NAPA, OFFICER
GARRETT WADE, OFFICER
DOMINIC DEGUILIO, OFFICER
ROBERT CHAMBERS, OFFICER
GARRETT SMITH, AND OFFICER
JOSHUA SMITH'S MOTION
TO DISMISS PLAINTIFFS'
SECOND AMENDED
COMPLAINT**

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION AND SUMMARY OF FACTS ............................................................. 1

II.     STANDARD OF REVIEW ..................................................................................... 2

III.    ARGUMENT ..................................................................................................... 3

        A.      Plaintiffs Pled Two Viable Claims for Violation of Kayleigh Slusher's
                Due Process Rights................................................................................... 3

                1.      Defendant NPD Officers Deprived Kayleigh Slusher of
                        Due Process Liberty Interests Created by State Law ................................ 3

                2.      Defendant Officers Wade, DeGuilio, Chambers, and Smith Violated
                        Kayleigh Slusher's Substantive Due Process Right to Be Free from State
                        Created Danger that Increased Her Risk of Harm...................................... 10

        B.      Defendants Do Not Have Qualified Immunity ........................................ 11

        C.      Plaintiffs' Familial Association Claims Are Proper................................ 12

        D.      Plaintiffs' Claims for Municipal Liability are Properly Pled .................. 13

        E.      Plaintiff Jason Slusher Properly Brings
                a Survival Claim for Bane Act Violation ................................................ 14

        F.      Plaintiffs' Negligence/Negligence Per Se Claims Are Sufficiently Pled............... 14

IV.     CONCLUSION AND RELIEF REQUESTED................................................. 15

# TABLE OF AUTHORITIES

## Federal Cases

*A.D. v. California Highway Patrol,*
    712 F.3d 446 (9th Cir. 2013) ............................................................................ 12

*A.E. ex rel. Hernandez v. County of Tulare,*
    666 F.3d 631 (9th Cir. 2012) ............................................................................ 13

*Albright v. Oliver,*
    510 U.S. 266 (1994) ............................................................................................ 4

*Anderson v. Creighton,*
    483 U.S. 635 (1987) .......................................................................................... 12

*Bell Atlantic v. Twombly,*
    550 U.S. 544 (2007) ................................................................................ 2, 3, 11

*Board of Directors v. Rotary Club,*
    481 U.S. 537 (1987) .......................................................................................... 13

*Burke v. County of Alameda,*
    586 F.3d 725 (9th Cir. 2009) .............................................................................. 9

*Carlo v. City of Chino,*
    105 F.3d 493, 498 (9th Cir. 1997) ................................................................. 5, 12

*Castro v. County of Los Angeles,*
    No. 12-56829,
    2016 U.S. App. LEXIS 14950 (9th Cir. Aug. 15, 2016) (en banc) ........................ 13

*Chaudhry v. City of Los Angeles,*
    751 F.3d 1096 (9th Cir. 2014) ..................................................................... 14, 15

*Clouthier v. County of Contra Costa,*
    591 F.3d 1232 (9th Cir. 2010) .......................................................................... 14

*Conn v. City of Reno,*
    591 F.3d 1081 (9th Cir. 2010) .......................................................................... 10

*DeShaney v. Winnebago County Department of Social Services,*
    489 U.S. 189 (1989) ........................................................................... 3, 5, 10, 12

*Erickson v. Pardus,*
    551 U.S. 89 (2007) .............................................................................................. 3

*Garcia v. Clark County*,
    No. 2:07-CV-01507-RCJ-PAL,
    2009 U.S. Dist. LEXIS 104940 (D. Nev. Nov. 10, 2009).........................................13

*Garlick v. County of Kern*,
    No. 1:13-CV-01051-LJO-JLT,
    2016 U.S. Dist. LEXIS 29656 (E.D. Cal. Mar. 8, 2016).........................................13

*Headwaters Forest Defense  v. County of Humboldt*,
    276 F.3d 1125 (9th Cir. 2002).........................................12

*Henry A. v. Willdon*,
    678 F.3d 991 (9th Cir. 2012).........................................11

*Hope v. Pelzer*,
    536 U.S. 730 (2002).........................................12

*Hubbard v. Blue Cross/Blue Shield*,
    42 F.3d 942 (5th Cir. 1995), *cert. denied*, 515 U.S. 1122 (1995).........................................15

*Humphries v. Los Angeles County*,
    554 F.3d 1170 (9th Cir. 2009).........................................5

*Humphries v. Los Angeles County*,
    No. SACV 03-697 JVS (MANx),
    2005 U.S. Dist. LEXIS 47040 (C.D. Cal. April 22, 2005).........................................5

*IDC v. City of Vallejo*,
    No. 2:13-cv-1987 DAD,
    2014 U.S. Dist. LEXIS 78487 (E.D. Cal. June 6, 2014).........................................14

*Johnson v. City of Shelby*,
    135 S. Ct. 346 (2014).........................................3, 13

*Johnson v. Meltzer*,
    134 F.3d 1393 (9th Cir. 1998).........................................4

*Johnson v. Shasta County*,
    83 F. Supp. 3d 918 (E.D. Cal. 2015).........................................3, 14

*Kennedy v. City of Ridgefield*,
    439 F.3d 1055 (9th Cir. 2006).........................................10, 11, 12

*Kentucky Department of Corrections v. Thompson*,
    490 U.S. 454 (1989).........................................5, 8, 12

*L.W. v. Grubbs*,
    974 F.2d 119 (9th Cir. 1992).........................................11

*Lacey v. Maricopa County (Arpaio)*,
   693 F.3d 896 (9th Cir. 2012) (en banc) ................................................................. 3

*Lee v. City of Los Angeles*,
   250 F.3d 668 (9th Cir. 2001) ................................................................. 13

*Lopez v. Tulare County*,
   No. CV-F-11-1547-LJO-BAM,
   2012 U.S. Dist. LEXIS 1833 (E.D. Cal. Jan. 6, 2012) ................................................................. 14

*Lyles v. City of Huntington Park*,
   No. CV 16-3223-GW (KSx) (C.D. Cal. July 7, 2016) ................................................. 5, 6, 8, 10

*M.H. v. County of Alameda*,
   90 F. Supp. 3d 889 (N.D. Cal. 2013) ................................................................. 14

*Mackey v. Pioneer National Bank*,
   867 F.2d 520 (9th Cir. 1989) ................................................................. 15

*Maxwell v. County of San Diego*,
   708 F.3d 1075 (9th Cir. 2013) ................................................................. 11

*Moore v. City of East Cleveland*,
   431 U.S. 494, 499 (1977) ................................................................. 13

*Moore v. City of Vallejo*,
   73 F. Supp. 3d 1253 (E.D. Cal. Oct. 17, 2014) ................................................................. 14

*Moreno v. Baca*,
   431 F.3d 633 (9th Cir. 2005), *cert. denied*, 126 S. Ct. 2900 (2006) ......................................... 11

*Neuroth v. Mendocino County*,
   No. 15-cv-03226-NJV,
   2016 U.S. Dist. LEXIS 11109 (N.D. Cal. Jan. 28, 2016) ................................................................. 14

*Oregon Advocacy Center v. Mink*,
   322 F.3d 1101 (9th Cir. 2003) ................................................................. 10

*Osborne v. County of Riverside*,
   385 F. Supp. 2d 1048 (C.D. Cal. 2005) ................................................................. 13

*Shelley v. County of San Joaquin*,
   954 F. Supp. 2d 999 (E.D. Cal. 2013) ................................................................. 13

*Slusher v. City of Napa*,
   No. C 15-2394 SBA,
   2015 U.S. Dist. LEXIS 166565 (Dec. 11, 2015) (Doc. 45) ................................................. passim

*Tolan v. Cotton*,
134 S. Ct. 1861 (2014) ................................................................. 12

*Town of Castle Rock v. Gonzalez*,
545 U.S. 748 (2005) ........................................................ 3, 4, 5, 12

*Wallis v. Spencer*,
202 F.3d 1126 (9th Cir. 1999) ........................................................ 7

*Young v. County of Los Angeles*,
655 F.3d 1156 (9th Cir. 2011) ...................................................... 12

*Zinerman v. Burch*,
494 U.S. 113 (1990) ........................................................................ 4

**California Cases**

*Alejo v. City of Alhambra*,
75 Cal. App. 4th 1180 (1999) ................................................. passim

*B.H. v. County of San Bernardino*,
62 Cal. 4th 168 (2015) ........................................................... passim

*Guzman v. County of Monterey*,
46 Cal. 4th 887 (2009) .................................................................... 7

*Landeros v. Flood*,
17 Cal. 3d 399 (1976) ...................................................... 6, 10, 15

*Scott v. County of Los Angeles*,
27 Cal. App. 4th 125 (1994) ........................................................ 15

*Sullivan v. County of Los Angeles*,
12 Cal. 3d 710 (1974) ................................................................... 15

**Federal Statutes**

42 U.S.C. § 1983 .................................................................... 13, 14

**California Statutes**

California Civil Code § 52.1 ......................................................... 14

California Government Code § 815.6 ......................................... 6, 15

California Government Code § 820.2 .............................................. 15

California Government Code § 821.6 .............................................. 15

California Government Code §§ 815.2 ........................................................................ 15

California Penal Code § 11164 *et seq.* ("CANRA") .......................................... passim

California Penal Code § 11164(b) .............................................................................. 8

California Penal Code § 11165.9 ............................................................................... 7

California Penal Code § 11166(a) .............................................................................. 6

California Penal Code § 11166.3 ............................................................................... 7

California Penal Code §§ 11165.7–66 .................................................................... 5, 6

California Welfare & Institutions Code § 305(a) ....................................................... 9

1

## I.     INTRODUCTION AND SUMMARY OF FACTS

This civil rights case arises from Defendants' violation of mandatory statutory and constitutional duties to investigate and report child abuse or neglect—as the California Legislature mandated "to provide maximum safety and protection for children" who are currently being abused—and to refrain from increasing Plaintiffs' risk of harm, which resulted in the unnecessary death of three-year-old Kayleigh Slusher on or about January 30, 2014.  The Second Amended Complaint ("SAC") pleads in plausible detail—despite the City's refusal to disclose information (SAC, ¶ 26)—how Defendants were repeatedly informed and had reason to suspect Kayleigh's abuse and neglect, yet chose to ignore and violate their official duties as Mandated Reporters, and actually increased Kayleigh's risk of harm.  *See*, SAC, ¶¶ 36–90.

The SAC also contains new facts obtained from the preliminary hearing in the murder cases against Mr. Warner and Ms. Kruger on November 9–10, 2015, and based on the state mandated training and standards that governed the officers' conduct and that the California Legislature presumed when it enacted, and re-enacted, its comprehensive legislative scheme for the protection of abused and neglected children.

The Napa Police Department (NPD) was called to Kayleigh's home for domestic disturbances many times, beginning on October 6, 2013 and January 8, 2014.  (SAC ¶¶ 36–37).  On January 23, 2014, the NPD and Defendant Officer Wade were informed that Kayleigh was in danger due to a possibly armed man with an arrest warrant living in her home, rampant illegal drug use there—including "crank"—drug users coming and going at all hours, possible physical abuse, and deprivation of food for Kayleigh.  (SAC ¶¶ 38–43).  Despite specific information that Kayleigh was in "immediate physical danger," Defendant Officer Wade and his partner refused to go to Kayleigh's home as they had been dispatched, because Wade "determined that the environment in which Kayleigh lived was not safe for him or his partner to go there."  (SAC ¶ 41).  At that time, Kayleigh already had obvious, severe injuries triggering Defendant Wade's mandatory duties to act, including investigation, reporting, and protection of Kayleigh by removing her from the home and taking her for emergency medical care.  (SAC ¶ 43).

On January 27, 2014, Defendant Officers Chambers and Garrett Smith went to Kayleigh's home for a domestic disturbance.  While there, they must have observed that "Kayleigh was obviously suffering from severe child abuse and neglect," including that she was "emaciated," with multiple large bruises apparent on her forehead, left temple, head, neck, arms, legs, back, torso, and buttocks, and "8 to 15 individual bruises

and abrasions to her abdomen," having already suffered the blunt force trauma that was causing her to be in "agonizing" pain, and "clearly and demonstrably ill," from the severe infection that would lead to her preventable death three days later.  (SAC ¶¶ 44–55).  Faced with these "readily apparent" signs of severe abuse and neglect, Defendants Chambers and Garrett Smith did nothing.  (SAC ¶ 54).

On January 29, 2014, Defendant Officers Wade and DeGuilio received more information that Kayleigh was being abused and/or neglected in her home.  When Defendants went to do a welfare check on Kayleigh, they observed obvious injuries to Kayleigh including large bruises on her face, Kayleigh's extreme sickness and malnourishment, known felons in the home, admitted illegal drug abuse that day, and other evidence that Kayleigh was in immediate peril.  (SAC, ¶¶ 66–69).  Defendants left, doing nothing besides tipping off Warner and Krueger that police were watching them so they were less likely to seek medical attention for Kayleigh themselves, leaving Kayleigh in an even more dangerous situation.  (SAC, ¶¶ 81, 89).  Then the officers falsely told Robin Slusher that "everything appeared normal" and that Wade would "keep an eye on the apartment," further increasing Kayleigh's risk by foreclosing other sources of aid and rescue. (SAC, ¶¶ 67, 76).  Defendants Wade and DeGuilio, like Defendants Chambers, Smith, and other Doe officers before them, ignored compelling information that Kayleigh was suffering severe abuse and/or neglect, and violated their mandatory duties to investigate, report, and protect Kayleigh by immediately taking Kayleigh into protective custody and obtaining emergency medical aid for her.  (SAC, ¶¶ 70–83).

On February 1, 2014, NPD officers discovered Kayleigh's lifeless body at her home.  Those officers saw extensive injuries and trauma from "old" injuries to Kayleigh.  The Napa County Coroner's pathologist determined that Kayleigh died from "fatal child abuse and neglect *over time* leading to death."  Had Defendant NPD officers obeyed their mandatory duties and Kayleigh received medical attention, she would have been "likely to survive."  (SAC ¶¶ 84–90).

Kayleigh's father, Jason Slusher, brings survival and wrongful death claims for violations of Kayleigh's right to life, liberty, and bodily integrity under the Fourteenth Amendment, and for violations of state law.  Jason Slusher and Kayleigh's grandparents, Robin and Benny Slusher, also bring individual claims for violation of their rights to familial association under the First and Fourteenth Amendments.

## II.   **STANDARD OF REVIEW**

In *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007), the Supreme Court held "we do not require

heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.  This "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" supporting the claims.  *Id.* at 556.  "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and that a recovery is very remote and unlikely." *Id*.  Moreover, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).  *See also Lacey v. Maricopa Cnty. (Arpaio)*, 693 F.3d 896, 924 (9th Cir. 2012) (en banc) (*Iqbal* "does not require us to flyspeck complaints looking for any gap in the facts").

A federal court may not apply a standard "more stringent than the usual pleading requirements of Rule 8(a)" in "civil rights cases alleging municipal liability." *Johnson v. City of Shelby*, 135 S. Ct. 346, 347 (2014).  Civil rights plaintiffs need only state "simply, concisely, and directly" the facts supporting their claims.  *Id.*  Federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted."  *Id.* at 346.

Moreover, pleading facts "'on information and belief' is sufficient so long as the other *Iqbal-Twombly* factors are satisfied." *Johnson v. Shasta Cnty.*, 83 F. Supp. 3d 918, 926 (E.D. Cal. 2015).

## III.  ARGUMENT

### A. Plaintiffs Pled Two Viable Claims for Violation of Kayleigh Slusher's Due Process Rights

Defendants' over-reliance on *DeShaney v. Winnebago County DSS*, 489 U.S. 189 (1989), misses the mark, because Plaintiffs' due process claims are based on: (1) an argument specifically left un-answered in *DeShaney*, that Kayleigh was deprived of a *liberty interest*, entitled to due process protection, created by state law, and (2) an exception recognized in *DeShaney* where officers' conduct increased her risk of harm.

#### 1.  Defendant NPD Officers Deprived Kayleigh Slusher of Due Process Liberty Interests Created by State Law

In *Town of Castle Rock v. Gonzalez*, 545 U.S. 748 (2005), the Supreme Court addressed part of a "question unanswered" in *DeShaney*: "whether--state 'child protection statutes gave [Joshua DeShaney] an 'entitlement' to receive protective services in accordance with the terms of the statute, an entitlement which would enjoy due process protection.'" *Id.* at 755 (citing *DeShaney*, 489 U.S. at 195, n.2).  The Court explained, "[s]uch entitlements are, of course, . . . not created by the Constitution.  Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source

such as state law." *Id.* at 756.  Further, "[a]lthough the underlying substantive interest is created by 'an independent source such as state law,' *federal constitutional law* determines whether that interest rises to the level of a 'legitimate claim of entitlement' protected by the *Due Process Clause*." *Id.* at 757.

In *Castle Rock*, the respondent claimed that she had a ***property interest*** in police enforcement of a restraining order against her husband, and that the town deprived her of this property interest without due process by having a policy that tolerated non-enforcement of restraining orders. *Id.* at 755.  To decide whether the restraining order in *Castle Rock* created a legitimate entitlement under the Due Process Clause, the Court examined whether state law "made enforcement of restraining orders *mandatory.*" *Id.* at 760  The Court also considered whether state law "gave *respondent* an entitlement to *enforcement* of the mandate," in particular, whether the respondent had any common law, contractual, or statutory entitlement to enforcement. *Id.* at 764–65.  The Court concluded that the respondent did not have a property interest in police enforcement of the restraining order, because: (1) Colorado law did not make police enforcement of that restraining order mandatory;[1] and (2) the respondent could not show that she had an entitlement to enforcement of the restraining order under Colorado law.  *Id.* at 758–66.

Here, in contrast, Plaintiffs have pled due process violations of a ***liberty interest*** based on Defendant Napa police officers' mandatory, enforceable duties under the California Child Abuse and Neglect Reporting Act ("CANRA"), Cal. Penal Code § 11164 *et seq.*  (SAC, ¶¶ 90, 95).  Moreover, the *Castle Rock* concurrence also noted that the respondent there, who claimed to have a property interest, "does not claim to have a protected liberty interest." *Id.* at 770.

**The liberty interest in bodily integrity, asserted here, is protected by both *procedural* and *substantive* due process.**  (SAC ¶ 95).  *See Zinerman v. Burch*, 494 U.S. 113 (1990) (procedural due process); *Johnson v. Meltzer*, 134 F.3d 1393, 1397 (9th Cir. 1998) ("[I]t is well established that a person's liberty interest in bodily integrity is one of the personal rights accorded substantive protection under the Due Process Clause.") (citing *Albright v. Oliver*, 510 U.S. 266, 272 (1994) (substantive due process protections accorded to matters relating to marriage, family, procreation, and the right to bodily integrity)).

---

[1] The restraining order's use of the word "shall" was not dispositive when read with other Colorado statutes that use "shall" in connection with obviously discretionary law enforcement duties.  *Id.* at 761–62.  Other plainly discretionary language in that restraining order undermined any argument that enforcement was mandatory under the circumstances of that case.  *Id.* at 763, 766

A liberty interest can be created by state law similarly to a property interest. "Stated simply, 'a State creates a protected liberty interest by placing substantive limitations on official discretion.'" *Ky. Dep't. of Corrs. v. Thompson*, 490 U.S. 454, 462 (1989) (citation omitted). For example, "explicitly mandatory language" in a state statute, such as use of the word "shall," has been found sufficient to create a liberty interest. *Id*. at 463. "In sum, the use of 'explicitly mandatory language,' in connection with the establishment of 'specified substantive predicates' to limit discretion, forces a conclusion that the State has created a liberty interest." *Id*. "The Ninth Circuit has likewise used the mandatory language test to determine that state statutes or regulations have created a liberty interest within the meaning of the Fourteenth Amendment." *Carlo v. City of Chino*, 105 F.3d 493, 498, 501 (9th Cir. 1997).

A Central District court already has found that CANRA created a due process protected entitlement where police have notice of child abuse or neglect. *Lyles v. City of Huntington Park*, No. CV 16-3223-GW (KSx) (C.D. Cal. July 7, 2016) (Haddad Decl., Ex. A, Doc. 19, ECF pp. 10–11). The *Lyles* court explained, "Whereas reporting in *Town of Castle Rock* was not mandatory, the California Penal Code expressly mandates that police officers report any reasonable suspicion that a child is subject to abuse—in fact, failure to do so is a crime. *See* Cal. Pen. Code §§ 11165.7–66. As such, the facts in *Town of Castle Rock* are not parallel. *Town of Castle Rock* establishes an avenue to a procedural due process claim separate from the limitations on substantive claims found in *DeShaney*. While this avenue was limited in that case by the discretion permitted by Colorado state law, California law is not so vague; as such, Plaintiff's Due Process Claim does not fail for lack of a cognizable legal theory." *Id*. The *Lyles* court granted those plaintiffs leave to amend, because they had "not sufficiently alleged that the Defendant knew or should have known about the risk of child abuse." *Id.* This Court, however, already found that Plaintiffs' allegations of Defendants' notice are sufficient, and Defendants' argument to the contrary "*strains credulity*." (Doc. 45, pp. 19–22). [2]

---

[2] Similarly, in *Humphries v. Los Angeles County*, No. SACV 03-697 JVS (MANx), 2005 U.S. Dist. LEXIS 47040 (C.D. Cal. April 22, 2005), the district court followed *Castle Rock* to decide whether CANRA created a liberty interest for people who might be erroneously named in an index of sex offenders. The court found **"[t]he necessary conditions for finding a liberty interest in CANRA, substantive predicates and mandatory action, are present."** *Id*. at *27. However, the district court declined to recognize a liberty interest for persons listed in the CANRA offender Index, because CANRA was not intended to protect such individuals; rather, "the principal focus of the statute is the protection of children and support to law enforcement agencies who investigate child abuse." *Id*. at *28–29. The *Humphries* district court opinion was reversed on other grounds in *Humphries v. Los Angeles County*, 554 F.3d 1170, 1185, n. 11 (9th Cir. 2009), where the Ninth Circuit found a protected liberty interest on a different basis.

This Court already found that "the CANRA provides 'substantive predicates' to guide the decisionmaker." (Doc. 45, p. 11:12–13). "The plain language of the statute clearly states that a '*mandated* reporter *shall* make a report' to CPS, police, or other law enforcement agency upon a reasonable suspicion of child abuse or neglect. Cal. Pen. Code § 11166(a)." (Doc. 45, pp. 10:23–11:1; Court's emphasis). This Court explained that the CANRA also created a duty to investigate possible child abuse, citing *Alejo v. City of Alhambra*, 75 Cal. App. 4th 1180, 1186 (1999). (Doc. 45, p. 10:12–17, n.5). The CANRA's mandatory duties are also enforceable. *See Alejo*, 75 Cal. App. 4th at 1185, 1190; Cal. Gov't Code § 815.6; *Lyles*, *supra* (citing Cal. Pen. Code §§ 11165.7–66).

In *B.H. v. County of San Bernardino*, 62 Cal. 4th 168 (2015), the Court "disapproved" *Alejo* only "to the extent it is inconsistent with this opinion." The *B.H.* Court preserved the rest of *Alejo*, noting:

> [i]n amending CANRA in 2000, the Legislature declared: "This act is not intended to abrogate the case of *Alejo v. City of Alhambra, 75 Cal.App.4th 1180*." (Stats. 2000, ch. 916, § 34, p. 6838.) … Similarly, in the 1980 enactment, the Legislature declared: "[I]n reenacting the Child Abuse Reporting Law ... , it is not the intent of the Legislature to alter the holding in the decision of *Landeros v. Flood (1976), 17 Cal.3d 399 [131 Cal. Rptr. 69, 551 P.2d 389]*, which imposes civil liability for a failure to report child abuse." (Stats. 1980, ch. 1071, § 5, p. 3425.)

*Id.* at 188 n.6. The *B.H.* Court limited the scope of its opinion to two questions: (1) "whether CANRA imposed a mandatory duty on the Sheriff's Department to **cross-report** the child abuse allegations to the relevant child welfare agency when it received the 911 report," [answer: "yes"], and (2) "whether CANRA imposed a mandatory duty on the investigating deputy sheriff to **report** the child abuse allegations and her investigative findings to the relevant child welfare agency despite her conclusion of no child abuse," [answer: "no"]. *Id.* at 176.

Holding that it was the Sheriff's Department's mandatory duty to cross-report to child welfare agencies "information received on alleged child abuse or neglect so that they may in turn coordinate their investigative procedures," *Id.* at 185, the Court concluded that the investigating deputy had no duty to file a second report of the same suspected child abuse "*when she was dispatched in response to a previously reported incident of suspected child abuse*." *Id.* at 196 (emphasis added). However, the deputy "would be required to report in the first instance" if she were dispatched to investigate something else and "observed evidence that would sustain an objective suspicion of child abuse," or if she were "dispatched to investigate a report of a suspected incident of child abuse and observed evidence that would sustain an objective suspicion

that a different, previously unreported incident or instance of child abuse had occurred," such as "additional incidents involving [the same victim]." *Id.* at 197.

NPD officers were dispatched to Kayleigh's home on October 6, 2013 and January 8, 2014 for as yet unidentified domestic disturbances. (SAC ¶¶ 36–37). Then, on January 23, 2014, Defendant Wade was dispatched to Kayleigh's home for something else (a warrant) when he received specific information that Kayleigh may be suffering abuse or neglect, and he refused to respond, report, or investigate at all. (SAC ¶¶ 38–43). On January 27, 2014, Defendants Chambers and Garrett Smith were dispatched to investigate something else (a domestic disturbance) when they observed, but did not investigate or report, evidence of Kayleigh's severe injuries, abuse, and neglect. (SAC ¶¶ 44–55). And, on January 29, 2014, after Defendants Wade and DeGuilio were informed that Kayleigh might be at risk of neglect or abuse from lack of food, drug use in the home, and possible physical violence, Defendants went there and observed evidence of far more extensive and long-standing abuse and neglect—"additional incidents,"—yet failed to investigate, protect Kayleigh, or report anything to CWS. (SAC ¶¶ 66–72).

In *B.H.*, the defendant deputy sheriff actually performed an investigation (unlike Defendants herein), thus her duty to investigate was not at issue.[3] *B.H.*, 62 Cal. 4th at 174. *B.H.* reaffirmed that both "law enforcement agencies" and "child welfare agencies" "are designated to accept reports of child abuse (§11165.9) and to investigate child abuse reports (§11166.3)." *Id.* at 191. The Court had previously explained, "[a]s the [CANRA] statutory scheme clearly contemplated, the officer's express duty to report was necessarily predicated on the officer first investigating the accounts of child abuse." *Guzman v. Cnty. of Monterey*, 46 Cal. 4th 887, 905 (2009). "Although in some instances it may require the exercise of judgment to identify whether a report involves child abuse or neglect, **such a determination does not involve the exercise of discretion."** *B.H.*, 62 Cal. 4th at 181 (emphasis added). This Court likewise explained that an officer's judgment of whether to report child abuse or neglect after investigation is part of the officer's mandatory duty, based on an objective standard. (Doc. 45, pp. 10:12–11:11, n.5).

---

[3] The *B.H.* Court noted that California courts of appeal have in some cases granted state law discretionary immunity to public employees for claims "based on their investigative findings" where they actually conducted investigations. However, any potentially applicable state law immunities have no bearing on Defendants' mandatory duties under *federal law*, because under California law, "[t]he first question always is whether there is liability for breach of a mandatory duty;" the applicability of any state law immunity is a separate issue. *B.H.*, 62 Cal. 4th at 179. Furthermore, "state law cannot provide immunity from suit for federal civil rights violations." *Wallis v. Spencer*, 202 F.3d 1126, 1144 (9th Cir. 1999).

After *B.H.*, *Alejo* remains good law to the extent it describes: (1) an agency's mandatory duties to report and investigate child abuse or neglect; (2) an officer's mandatory duty to report reasonably suspected child abuse or neglect observed by the officer in the first instance; (3) an officer's mandatory duty to investigate possible child abuse or neglect; and (4) the remainder of issues addressed in *Alejo* that are not inconsistent with *B.H.*, including concerning the purposes of CANRA, proximate cause, and immunities.

This Court observed that Plaintiffs previously did not brief whether there requires, or the CANRA contains, "'explicitly mandatory language,' i.e., specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow…". (Doc. 45, pp. 11–12) (quoting *Thompson*, 490 U.S. at 463). *Lyles* found a liberty right from CANRA. And, Plaintiffs have now clarified that Defendants' mandatory CANRA duties, if followed, would have fulfilled "[t]he purpose of CANRA … to protect children from abuse and neglect." *B.H.*, 62 Cal. 4th at 182; *see* SAC ¶¶ 43, 44, 54, 71, 75, 78, 83.

The CANRA's mandatory duties are not empty gestures. "Here, it is indisputable that the mandatory duty to investigate and report accounts of child abuse was intended to 'protect children from child abuse.' (§ 11164, subd. (a.).)." *Alejo*, 75 Cal. App. 4th at 1189. Thus, the CANRA mandates cross-reporting between law enforcement and child welfare agencies, and multiple investigations, using each agency's and officer's unique skills and powers to ensure that its purpose is done. *B.H.*, 62 Cal. 4th at 182–183. **"In any investigation of suspected child abuse or neglect, <u>all persons</u> participating in the investigation of the case shall consider the needs of the child victim and <u>*shall do*</u> whatever is necessary to prevent psychological harm to the child victim."** CANRA, § 11164(b) (emphasis added).

The Legislature's child protection scheme in the CANRA was enacted, and re-enacted, against the well-known tableau of generally accepted law enforcement standards and training, also mandated by the Legislature when it created the California Commission on Peace Officer Standards and Training (POST). The California Supreme Court also noted the Legislature's expectations of police under the CANRA:

> … since the immediate protection of the child is the paramount concern and since early intervention is vital due to the recidivist and escalatory nature of the crime of child abuse, law enforcement must be involved in *decision-making* along with the other disciplines. [ ] Indeed, the nature of law enforcement's role and training brings unique qualifications to the handling of child abuse cases, and *which must be part of interagency decision making, particularly in the initial response*. ... [ ] Under California child abuse reporting statutes and law, police play a central role in crisis intervention and in initial investigation and handling

of child abuse cases with the following functions:  [ ] **1. Protection of the child** ….
*B.H.*, 62 Cal. 4th at 190–191 (emphasis added).  Further, "[p]olice are the only 24-hour field service child protective agency with investigatory and arrest authority, are the only round-the-clock branch of government that can provide immediate response, and are **the only agency empowered to take a child into immediate protective custody**."  *Id.* at 191 (emphasis added; internal quotations omitted).

Accordingly, Plaintiffs pled:

- Had Defendant officers obeyed their mandatory duties to investigate and report the abuse and neglect of Kayleigh that they were informed of and observed, they were "**required**, based on generally accepted law enforcement standards and training, to take her into protective custody, obtain medical treatment for her, and immediately report the suspected child abuse to Child Welfare Services, among other things."  (SAC ¶ 43; *see also* ¶ 44).

- After seeing "KAYLEIGH in this grave and life-threatening medical condition with obvious signs of abuse … [n]o reasonable officer would have failed to examine and question KAYLEIGH, conduct a thorough child abuse investigation, immediately report the suspected abuse to CWS and other officials, take KAYLEIGH into protective custody, or obtain emergency medical care for her."  (SAC ¶ 54; *see also* ¶ 71 re: WADE and DEGUILIO).

- "If Defendants had complied with their mandatory duties, the mandatory outcomes included immediately and thoroughly conducting an emergency investigation of child abuse, immediately reporting the abuse to CWS, the police, sheriff and other law enforcement, examining and questioning KAYLEIGH outside the presence of her caregivers, immediately taking KAYLEIGH into protective custody, and immediately taking KAYLEIGH to the emergency room for the life-saving emergency medical treatment KAYLEIGH needed."  (SAC ¶ 83; *see also* ¶¶ 75, 78).

Had they complied with their CANRA mandates in light of generally accepted standards and training, reasonable officers would have removed Kayleigh from her torturous home with "reasonable cause to believe that the child [was] in imminent danger of serious bodily injury."  *Burke v. Cnty. of Alameda*, 586 F.3d 725, 731 (9th Cir. 2009) (affirming this Court); *see also* Cal. Welf. & Inst. Code § 305(a).  Qualified immunity would protect the officer who erred on the side of protecting a child.  *Id.*

Defendants may dispute the generally accepted law enforcement standards and training that they were required to follow when carrying out their CANRA mandates (ultimately the subject for expert testimony), or Defendants may dispute whether violation of their CANRA mandates resulted in harm; however, this Court already has determined that such questions of fact cannot be resolved at the pleading stage.  (Doc. 45, p. 21:20–27).  The California Legislature presumed that adherence to CANRA mandates would in fact prevent child abuse and neglect, and protect children:

**Obviously the Legislature believed compliance with the investigating and reporting requirements of the act would be a substantial factor in preventing child abuse.**

1

> **Conversely, the failure to investigate or report occurrences of child abuse greatly enhances the chances of repeated and more severe abuse, as discussed in *Landeros v. Flood, supra*, 17 Cal. 3d at p. 412.**

2

*Alejo*, 75 Cal. App. 4th at 1192.  The Ninth Circuit has applied a similar rule of causation where an officer is

3

alleged to have violated a standard meant to prevent a certain danger.  *Conn v. City of Reno*, 591 F.3d 1081,

4

1100 (9th Cir. 2010) (compliance with jail's suicide policies would have prevented inmate's suicide).

5

*Accord*, *Oregon Advocacy Center v. Mink*, 322 F.3d 1101, 1121–22 (9th Cir. 2003), holding that the

6

Oregon legislature's statutory scheme required Oregon State Hospital (OSH) to grant timely admission to

7

inmates found incompetent to stand trial (IST), and such inmates have a Due Process "liberty interest in

8

receiving restorative treatment."  The legislature did not specify what treatment would be "restorative,"

9

leaving such decisions to OSH licensed staff, based on their standards and training, to ensure their treatment

10

was restorative.  "OSH's refusal to accept such defendants" "contravenes the legislature's statutory mandate

11

that OSH provide them with restorative treatment," and violates the inmates' procedural and substantive due

12

process rights.  *Id.* at 1121.  The Court found that if timely admitted to OSH, then given OSH's "ability to

13

evaluate and treat mentally ill defendants," inmates' rights to restorative treatment would be met.  *Id.* at

14

1119–22.  As in the present case, while there was no absolute guarantee that following the statutory mandate

15

(timely admission to OSH / cross-reporting and investigation required by CANRA) would achieve the

16

legislature's purpose (restorative treatment for IST inmates / protection of abused or neglected children), the

17

Ninth Circuit deferred to the legislature's determination that applying its mandates would be most likely to

18

achieve the desired outcome.  And, the Central District in *Lyles* essentially found the same for CANRA.

> ### 2. Defendant Officers Wade, DeGuilio, Chambers, and Smith Violated Kayleigh Slusher's Substantive Due Process Right to Be Free from State Created Danger that Increased Her Risk of Harm

19

20

21

"It is well established that the Constitution protects a citizen's liberty interest in her own bodily

22

security."  *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1061 (9th Cir. 2006).  "It is also well established

23

that, although the state's failure to protect an individual against private violence does not generally violate

24

the guarantee of due process, it can where the state action 'affirmatively place[s] the plaintiff in a position of

25

danger,' that is, where state action creates or exposes an individual to a danger which he or she would not

26

have otherwise faced."  *Id.* (citing *DeShaney*, 489 U.S. at 197).  This Court permitted Plaintiffs leave to

27

amend to plead facts that "suggest [Defendants] placed [Kayleigh] in danger or *affirmatively increased* the

28

1   risk of harm to her through their inaction." (Doc. 45, pp. 6:26–9:20).

2         Plaintiffs have now pled:

3         Through their volitional, intentional, and deliberately indifferent acts, omissions, and
    misrepresentations, Defendants WADE, DEGUILIO, CHAMBERS AND SMITH
4   affirmatively placed Kayleigh Slusher in danger, exposing her to a danger which she would
    not have otherwise faced, and leaving her in a situation that was more dangerous than the one
5   in which they found her. These Defendants did so by going to KAYLEIGH's home, thereby
    tipping off Ryan Warner and Sara Krueger that police were monitoring them and interested in
6   them, while at the same time violating their mandatory duties as described above, and causing
    Ryan Warner and Sara Krueger to conceal KAYLEIGH within their apartment and to not seek
7   medical care for KAYLEIGH—including taking KAYLEIGH to a hospital—for fear that
    police would arrest them, or would remove KAYLEIGH from them, if they (Ryan and Sara)
8   did anything so conspicuous.

9   (SAC ¶ 81; *see also* ¶ 89). These allegations "raise a reasonable expectation that discovery will reveal

10  evidence" supporting the claims. *Twombly*, 550 U.S. at 556. *See Kennedy*, 439 F.3d at 1063 (notifying

11  neighbor of complaint created opportunity for assault "that otherwise would not have existed").[4]

12        "[F]alse assurances by a law enforcement officer" … "can constitute 'an additional and aggravating

13  factor, making [the plaintiff] more vulnerable to the danger he had already created.'" (Doc. 45, p. 9:5–9

14  (citing *Kennedy*, 439 F.3d at 1063)); *see also L.W. v. Grubbs*, 974 F.2d 119, 121 (9th Cir. 1992) ("The

15  Defendants also enhanced L.W.'s vulnerability to attack by misrepresenting to her the risks attending her

16  work."). On January 29, 2014, Defendant Wade falsely told Robin Slusher that "everything appeared

17  normal" at Kayleigh's home, that there was food for Kayleigh, and that he would "keep an eye on the

18  apartment." (SAC ¶ 67). Had Defendant Wade not lied to Robin Slusher, Plaintiffs would have sought to

19  protect Kayleigh by other means, including self-help. (SAC ¶ 76, 89). Just as "[i]mpeding access to medical

20  care amounts to leaving a victim in a more dangerous situation[,]" *Maxwell v. Cnty. of San Diego*, 708 F.3d

21  1075, 1082 (9th Cir. 2013), so too would impeding access to other sources of rescue.

22    **B. Defendants Do Not Have Qualified Immunity**

23        Defendants bear the burden of establishing qualified immunity. *Moreno v. Baca*, 431 F.3d 633, 638

24  (9th Cir. 2005), *cert. denied*, 126 S. Ct. 2900 (2006). To deny qualified immunity, the exact same violation

25  _____

26  [4] The Ninth Circuit rejected the claim that Defendants "must do more than expose the plaintiff to a danger
    that already existed." *Henry A. v. Willdon*, 678 F.3d 991, 1002–03 (9th Cir. 2012). "[B]y its very nature, the
27  [state created danger] doctrine only applies in situations where the plaintiff was directly harmed *by a third
    party*—a danger that, in every case, could be said to have 'already existed.'" *Id.* (emph. in original).

28

need not have been previously held unlawful; rather, the contours of the right must be sufficiently clear so that, in light of preexisting law, the unlawfulness of the actions is apparent. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "[A]ny requirement that facts of previous cases be "materially similar" to the case at issue is a "rigid gloss on the qualified immunity standard" that is "not consistent with our cases." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). The "salient question" is whether the state of the law at the time gave the defendant "fair warning" that his alleged conduct was unconstitutional. *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (citing *Hope*, 536 U.S. at 741). "[W]e need not find a prior case with identical, or even 'materially similar' facts." *Kennedy*, 439 F.3d at 1065–66. "We have explained before that the responsibility for keeping abreast of constitutional developments rests 'squarely on the shoulders of law enforcement officials. Given the power of such officials over our liberty, and sometimes over our lives, this placement of responsibility is entirely proper.'" *Id.* at 1065–66 (citation omitted).

**Violation of Liberty Interest.** It has long been clear that a due process protected liberty interest may arise from state law. *Kentucky v. Thompson*, *supra*; *Castle Rock, supra; Carlo, supra.* As in *Carlo*, Defendants cannot claim ignorance of their mandatory duties created by state law. *Carlo*, 105 F.3d at 500; *see also Alejo, supra.* The *Carlo* Court denied qualified immunity where officers were required to obey a state law that created a liberty interest. **The same analysis applies here.** *See, Carlo*, **103 F.3d at 500–501**.

Additionally, violation of statewide standards will forfeit qualified immunity. *Headwaters Forest Def. v. Cnty. of Humboldt*, 276 F.3d 1125, 1131 (9th Cir. 2002) (no qualified immunity where officers violated regional and statewide police protocol); *Young v. Cnty. of Los Angeles*, 655 F.3d 1156, 1162, n.7, 1168, n.9 (9th Cir. 2011) (violation of California POST training standards).

**State Created Danger.** Less factual detail is required to clearly establish a due process claim than an excessive force claim. *Kennedy*, 439 F.3d at 1066, n.7. "[T]he 'state-created danger' doctrine predates *DeShaney*." *Id.* at 1061, n.1. There is no qualified immunity for a state created danger. *Id.* at 1065–67. *See also A.D. v. Cal. Highway Patrol*, 712 F.3d 446, 454 (9th Cir. 2013) (jury verdict establishing due process violation "essentially compelled" court to deny qualified immunity).

**C. Plaintiffs' Familial Association Claims Are Proper**

Individuals have a fundamental liberty interest in "companionship and society" with certain close family members, and "the state's interference with that liberty interest without due process of law is

remediable under 42 U.S.C. § 1983." *Lee v. City of Los Angeles*, 250 F.3d 668, 685–86 (9th Cir. 2001). "Moreover, the First Amendment protects those relationships, including family relationships, that presuppose deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life." *Id.* (citing *Bd. of Dirs. v. Rotary Club*, 481 U.S. 537, 545 (1987)).[5]

Plaintiffs do not contest that the applicable liability standard for a familial association claim under either the First or Fourteenth Amendment is the same as for the underlying claim. The liability standard for such a claim is failure to take objectively reasonable measures in response to a serious risk of harm. *Castro v. Cnty. of L.A.*, No. 12-56829, 2016 U.S. App. LEXIS 14950, at *26 (9th Cir. Aug. 15, 2016) (en banc).

**D. Plaintiffs' Claims for Municipal Liability are Properly Pled**

A federal court may not apply a standard "more stringent than the usual pleading requirements of Rule 8(a)" in "civil rights cases alleging municipal liability." *Shelby*, 135 S. Ct. at 347.

Plaintiffs have corrected their previous failure to distinguish the unconstitutional policies of the City and the County. (Doc. 45, pp. 14:20–15:3.) *See* SAC ¶¶ 101–102.

"To survive a motion to dismiss [a *Monell* claim], 'a bare allegation that government officials' conduct conformed to some *unidentified* government policy or custom' is insufficient[.]" *Shelley v. Cnty. of San Joaquin*, 954 F. Supp. 2d 999, 1009 (E.D. Cal. 2013) (quoting *A.E. ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (emphasis added)). Plaintiffs have identified the customs and policies

---

[5] **Defendants do not challenge the standing of grandparents Robin and Benny Slusher to bring their familial association claims for the death of their granddaughter, Kayleigh.** Such claims have been recognized: *Osborne v. County of Riverside*, 385 F. Supp. 2d 1048, 1053–55 (C.D. Cal. 2005) (grandparents with "a long-standing custodial relationship" with grandchildren such that together they constitute an "existing family unit" possess a liberty interest in familial integrity and association); *Garcia v. Clark Cnty.*, No. 2:07-CV-01507-RCJ-PAL, 2009 U.S. Dist. LEXIS 104940, at *14 (D. Nev. Nov. 10, 2009) (grandparents' familial association claim). *Garlick v. Cnty. of Kern*, No. 1:13-CV-01051-LJO-JLT, 2016 U.S. Dist. LEXIS 29656 at *115–17 (E.D. Cal. Mar. 8, 2016) (question of fact whether unmarried couple's familial relationship was close enough for familial association claim). *See also Moore v. City of East Cleveland*, 431 U.S. 494, 499, 503–06 (1977) (invalidating city ordinance that violated grandmother's fundamental right to reside with the grandchild whom she had established a long-standing custodial relationship).

Plaintiffs Robin and Benny Slusher have pled that they had a "long-standing custodial relationship with Kayleigh Slusher, such that they constituted a family unit," and that they had "the closest possible healthy relationship with [their] granddaughter that a [grandparent] could have." (SAC, ¶¶ 4–5, 30–33).

underlying their § 1983 municipal liability claims in Count Two, SAC, ¶¶ 100–107.  Several of these factually identified customs and policies are almost identical to those in *IDC v. City of Vallejo*, No. 2:13-cv-1987 DAD, 2014 U.S. Dist. LEXIS 78487, at *13–20 (E.D. Cal. June 6, 2014), and the cases cited therein, **as well as the following cases denying motions to dismiss *Monell* claims with complaints drafted by Plaintiffs' counsel (following the same pleading format as in the SAC):** *Johnson*, 83 F. Supp. 3d at 930–33 (identification of unconstitutional customs and policies, omissions, and allegations of failures to train and supervise sufficient to deny a motion to dismiss); *Neuroth v. Mendocino Cnty.*, No. 15-cv-03226-NJV, 2016 U.S. Dist. LEXIS 11109, at *13–16 (N.D. Cal. Jan. 28, 2016) (same); *Moore v. City of Vallejo*, 73 F. Supp. 3d 1253, 1258–59 (E.D. Cal. Oct. 17, 2014) (same); *M.H. v. Cnty. of Alameda*, 90 F. Supp. 3d 889, 900–01 (N.D. Cal. 2013) (same); *Lopez v. Tulare Cnty.*, No. CV-F-11-1547-LJO-BAM, 2012 U.S. Dist. LEXIS 1833, at *24–25 (E.D. Cal. Jan. 6, 2012) (same).

Furthermore, several unconstitutional customs and policies alleged are based on the City's **omissions**, including failures to train and supervise "due to their programmatic failures in the face of the obvious need ...."  (SAC ¶¶ 101(e), 103).  *See Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1249 (9th Cir. 2010) (explaining *de facto* policy of omission).  Without the benefit of discovery it would not be possible to plead the absence of something with any more particularity.

**E.  Plaintiff Jason Slusher Properly Brings a Survival Claim for Bane Act Violation**

Plaintiff Jason Slusher has standing to bring the Bane Act claim as a survival claim.  (Doc. 45, p. 18:3–17).  A defendant's volitional violation of rights may itself satisfy the Bane Act's requirement of violation of rights "by threat, intimidation, or coercion."  The Ninth Circuit has held that "the elements of [an] excessive force claim under § 52.1 are the same as under § 1983."  *Chaudhry v. City of L.A.*, 751 F.3d 1096, 1105–06 (9th Cir. 2014).  Two Northern District courts have held that deliberately indifferent due process violations also inherently meet the coercion standard: *M.H.*, 90 F. Supp. 3d 889, 897–98; *Neuroth*, 2016 U.S. Dist. LEXIS 11109, at *21–22.  Plaintiffs also pled independent facts to support a finding of threat, intimidation, or coercion.  *See* SAC ¶ 110.

**F.  Plaintiffs' Negligence/Negligence Per Se Claims Are Sufficiently Pled**

This Court previously found that Plaintiffs' claims for negligence/negligence per se, based on Defendants' mandatory duties, are factually and legally supported, explaining that Defendants' argument

"*strains credulity*."  (Doc. 45, pp. 19–22).  *See, Alejo, supra, Landeros*, *supra.*  As shown above, *B.H.,*
*supra*, does not relieve either the City or its officers of CANRA's mandates under these facts.  *See*, pp. 6–8,
*supra*.  Defendant City of Napa is liable for its officers' violations of common law and mandatory duties.
Cal. Gov't Code §§ 815.2, 815.6; *Chaudhry*, 751 F.3d at 1106–07; *Alejo*, 75 Cal. App. 4th at 1184–85, n.3.

Defendants raise the same immunity arguments this Court already denied.  By its nature, a mandatory
duty is not discretionary, and is not immune under Cal. Gov't Code § 820.2 or other California statutes
providing immunity.  *Alejo*, at 1192–94; *Scott v. Cnty. of L.A.*, 27 Cal. App. 4th 125, 141–44 (1994).
Further, Cal. Gov. Code § 821.6 has not been applied to give prosecutorial immunity to police who violate
their mandatory duties to investigate and report child abuse, but rather has been applied sometimes to county
social workers in their limited quasi-prosecutorial role in child custody proceedings.  *See Scott*, 27 Cal. App.
4th at 143–44; *Sullivan v. Cnty. of L.A.*, 12 Cal. 3d 710, 719–21 (1974) ("the Legislature intended [§ 821.6]
to protect government employees from liability only for *malicious prosecution*").  Moreover, Defendant
Napa Officers did not "institute or prosecute any judicial or administrative procedure…" as required for §
821.6 immunity.  On the contrary, because they violated their mandatory duties, they did nothing to initiate
or further any prosecution.  (Further, please see Plaintiffs' oppo. to County Defs' motion).

Proximate cause is a question of fact that cannot be resolved at the pleading stage.  (Doc. 45, p. 21).

## IV.   <u>CONCLUSION AND RELIEF REQUESTED</u>

Plaintiffs respectfully request that this Court deny Defendants' motion, or grant leave to amend.

Alternatively, if this Court dismisses all federal claims, then Plaintiffs request that this Court
maintain supplemental jurisdiction over the state law claims while Plaintiffs seek appeal of dismissal of
federal claims to the Ninth Circuit, to avoid duplicative and piecemeal litigation in both state and federal
courts.  *Hubbard v. Blue Cross/Blue Shield*, 42 F.3d 942, 947 (5th Cir. 1995), *cert. denied*, 515 U.S. 1122
(1995) ("When all federal claims are dismissed, the district court enjoys wide discretion in determining
whether to retain jurisdiction over the remaining state law claims."); *Mackey v. Pioneer Nat'l Bank*, 867 F.2d
520, 523 (9th Cir. 1989) (district court properly exercised discretion to maintain supplemental jurisdiction
over state law claims after sole federal claim was dismissed; due to "common nucleus of operative facts"
"retention of jurisdiction well served the purposes of judicial economy and efficiency").

1  Dated:  August 26, 2016                    **HADDAD & SHERWIN LLP**

2                                                /s/ *Michael J. Haddad*
                                               _____
3                                              MICHAEL J. HADDAD
                                               Attorneys for Plaintiffs
4                                              KAYLEIGH SLUSHER, Dec., JASON SLUSHER,
                                               ROBIN SLUSHER and BENNY SLUSHER
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28