UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| KAYLEIGH SLUSHER, Deceased, THROUGH HER SUCCESSOR IN INTEREST JASON SLUSHER; JASON SLUSHER, Individually; ROBIN SLUSHER, Individually; and BENNY SLUSHER, Individually, | Case No:  C 15-2394 SBA |
| | **ORDER GRANTING IN PART AND DENYING IN PART AS MOOT DEFENDANTS' MOTIONS TO DISMISS** |
| Plaintiffs, | Dkt. 85, 87 |
| vs. | |
| CITY OF NAPA, a public entity; NAPA POLICE OFFICER GARRETT WADE, Individually; NAPA POLICE OFFICER DEGUILIO, Individually; NAPA POLICE OFFICER ROBERT CHAMBERS, Individually; NAPA POLICE OFFICER GARRETT SMITH, Individually; NAPA POLICE OFFICER JOSHUA SMITH, Individually; COUNTY OF NAPA, a public entity; NAPA COUNTY CHILD WELFARE SERVICES SOCIAL WORKER NANCY LEFLER, Individually; NAPA COUNTY CHILD WELFARE SERVICES WORKER ROCIO DIAZ-LARA, Individually; and DOES 1–50, Jointly and Severally, | |
| Defendants. | |

The father and grandparents of a three year-old child beaten to death by her mother and her mother's boyfriend bring the instant civil rights action under 42 U.S.C. § 1983 against police officers and social workers who failed to remove the child from her mother's custody.  The Second Amended Complaint alleges federal claims for denial of substantive and procedural due process, municipal liability and interference with familial association and supplemental state law claims for violation of the Bane Act and negligence/negligence per se.

The parties are presently before the Court on the County Defendants and City Defendants' respective motions to dismiss the Second Amended Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]  The Court, having read and considered the papers filed in connection with these matters and being fully informed, hereby GRANTS IN PART and DENIES IN PART the motions to dismiss.  The federal claims are dismissed without further leave to amend.  The Court declines to assert supplemental jurisdiction over Plaintiffs' remaining state law claims, which are dismissed without prejudice to refiling in state court.[2]

## I.   BACKGROUND

### A.   FACTUAL SUMMARY

The parties are familiar with the facts of this case, which are summarized herein to the extent they are pertinent to the instant motions.  The decedent child, Kayleigh Slusher ("Kayleigh"), is the biological daughter of Jason Slusher ("Jason") and Sara Krueger ("Krueger").  During the relevant time period, Jason was incarcerated on a matter unrelated to this action.  As a result, Kayleigh and her mother initially lived with Kayleigh's paternal grandparents, Robin Slusher ("Robin") and Benny Slusher ("Benny").  Krueger eventually moved to an apartment and took Kayleigh with her.  After Kayleigh moved out, Robin and Benny became increasingly concerned for her welfare.  Their fears were heightened by the fact that Krueger and her boyfriend, Ryan Warner ("Warner"), were using illegal drugs.  In addition, Warner was a methamphetamine addict with an outstanding arrest warrant and extensive criminal history and who associated with similarly unsavory individuals.

Robin and Benny repeatedly called the Napa Police Department ("NPD") and Napa County Child Welfare Services ("CWS") to check on Kayleigh's welfare.  CWS social

---

[1] The County Defendants consist of the County of Napa and two county social workers.  The City Defendants consist of the City of Napa and four of its police officers.  The identity of the individual defendants is discussed in the Factual Summary section of this Order.

[2] The Court, in its discretion, finds this matter suitable for resolution without oral argument.  See Fed. R. Civ. P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

workers Nancy Lefler-Panela ("Lefler-Panela") and Rocio Diaz-Lara ("Diaz-Lara") told Robin there was nothing CWS could do and directed her to contact the police.  Robin made a number of detailed reports to the NPD that Kayleigh was living in an unsafe household and asked that officers investigate the situation.  NPD did not inform CWS of those reports and did little to investigate Robin's complaints.  Finally, on January 29, 2014, NPD Officers Garrett Wade and Deguilio visited the Krueger household to conduct a welfare check on Kayleigh.  The officers observed that Kayleigh had bruises on her face, and appeared gaunt, sick, malnourished and distressed.  The officers also observed Warner, who looked sickly and appeared to be under the influence of drugs.  Once inside the apartment, Kayleigh vomited in front of them, and was quickly taken to the bathroom by Krueger. They also saw a male whom they knew was on probation attempt to depart from the premises.  Krueger asked the officers to leave.  The officers complied, but inexplicably without making any effort to speak with Kayleigh or physically examine her.

On or about February 1, 2014, unspecified NPD police officers returned to the Krueger residence for another welfare check.  The officers discovered Kayleigh in her bed, deceased.  Her body had obvious facial injuries and trauma consisting of large contusions on her forehead, face and neck that were in various stages of healing.  Her eyes were sunken in with dark bruising around her eyes.  The Napa County District Attorney later reported that Kayleigh died due to multiple blunt force trauma with impact injuries to her head, torso and extremities, child abuse and neglect.  Krueger and Warner were charged in the Napa County Superior Court with torture and murder.  See People v. Sara Krueger, CR169462; People v. Ryan Warner, CR 169461.  Trial is anticipated to commence in February 2017.[3]

---

[3] The County Defendants previously moved to stay the instant action pending the conclusion of the state criminal proceedings.  The Court denied that motion on June 9, 2016.  Dkt. 99.

**B.     PROCEDURAL HISTORY**

On May 29, 2015, Jason, individually and as the successor in interest to Kayleigh, and grandparents Robin and Benny, in their individual capacities, filed the instant action against:  the City of Napa; County of Napa; the NPD; NPD Chief Richard Melton; NPD Officer Wade; NPD Officer Deguilo; CWS worker Diaz-Lara; and CWS worker Lefler-Panela.

On July 1, 2015, Plaintiffs filed a First Amended Complaint ("FAC") which asserted the following claims:  (1) violation of due process and interference with familial relations, pursuant to 42 U.S.C. § 1983; (2) municipal liability pursuant to <u>Monell v. Dep't of Soc. Serv. of N.Y.</u>, 436 U.S. 658 (1978); (3) violation of the Bane Act; and (4) negligence/negligence per se.

The County Defendants and City Defendants separately filed motions to dismiss all claims alleged in the FAC, which the Court granted in part and denied in part.  Dkt. 45. The Court dismissed Plaintiffs' first claim under 42 U.S.C. § 1983 for violation of due process and interference with familial association; second claim under <u>Monell</u>; and third claim for violation of the Bane Act.[4]  The Court denied the motion as to Plaintiffs' claim for negligence/negligence per se.  Dkt. 45.  Plaintiffs were granted leave to amend their dismissed claims.

Plaintiffs timely filed their Second Amended Complaint ("SAC").  Dkt. 52.  The SAC re-alleges the four claims from the FAC, as amended to address the deficiencies identified by the Court in its earlier order.  In terms of party-defendants, the SAC omits Chief Melton, and adds NPD Officers Robert Chambers, Garrett Smith and Joshua Smith. Pursuant to Rule 12(b)(6), Defendants now move to dismiss all claims alleged therein.  The motions are fully briefed and are ripe for adjudication.

---

[4] Plaintiffs' familial association claim was premised on both the Fourteenth and First Amendment.  Because the parties did not adequately address the merits of the First Amendment claim, the Court declined to dismiss said claim.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  "Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013).  "Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires not only 'fair notice of the nature of the claim, but also grounds on which the claim rests.'" Zixiang Li v. Kerry, 710 F.3d 995, 998-99 (9th Cir. 2013) (quoting in part Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 n.3 (2007)).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570 (2007)).

In assessing the sufficiency of the pleadings, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).  The court is to "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." Outdoor Media Group, Inc. v. City of Beaumont, 506 F.3d 895, 899-900 (9th Cir. 2007).  Where a complaint or claim is dismissed, leave to amend generally is granted, unless further amendment would be futile. Cervantes v. Countrywide Home Loans, Inc., 656 F.3d 1034, 1041 (9th Cir. 2011).

## III.    DISCUSSION

### A.    CLAIMS UNDER 42 U.S.C. § 1983

Count One of the SAC, which is predicated on 42 U.S.C. § 1983, alleges claims for violation of substantive and procedural due process and interference with familial relations. This set of claims is directed against the individual defendants:  Officers Wade, Deguilo,

1   Chambers and Smith; and CWS workers Diaz-Lara and Lefler-Panela.  SAC ¶¶ 94-99.  The

2   Court analyzes Defendants' arguments for dismissing these claims below.

3   **1.       Substantive Due Process**

4       Generally, "a State's failure to protect an individual against private violence simply

5   does not constitute a violation of the Due Process Clause."  DeShaney v. Winnebago Cty.

6   Dep't of Soc. Servs., 489 U.S. 189, 196 (1989).  The Ninth Circuit recognizes two

7   exceptions to this general rule: (1) the "special relationship" exception; and (2) the "danger

8   creation" exception.  L.W. v. Grubbs, 974 F.2d 119, 121 (9th Cir. 1992).  Plaintiffs rely on

9   the latter, which applies "when the state affirmatively places the plaintiff in danger by

10  acting with 'deliberate indifference' to a 'known or obvious danger' (the state-created

11  danger exception) . . . ."  Patel v. Kent School Dist., 648 F.3d 965, 971-72 (9th Cir. 2011)

12  (citations omitted).  In assessing the applicability of this exception, courts look to:

13  "(1) whether any affirmative actions of the official placed the individual in danger he

14  otherwise would not have faced; (2) whether the danger was known or obvious; and

15  (3) whether the officer acted with deliberate indifference to that danger."  Henry A. v.

16  Willden, 678 F.3d 991, 1002 (9th Cir. 2012); see also Pauluk v. Savage, 836 F.3d 1117,

17  1124-25 (9th Cir. 2016).

18      The Court previously found that Plaintiffs had failed to allege sufficient facts to

19  demonstrate that Defendants affirmatively placed Kayleigh in a position that increased the

20  risk of harm to her.  Dkt. 45 at 9.  The SAC does not cure that deficiency.  As before,

21  Plaintiffs continue to allege that Kayleigh's death was caused by Defendants' "failure to

22  investigate and/or report child abuse and/or neglect . . . , remove KAYLEIGH from her

23  obviously abusive and dangerous home and seek emergency medical care for her, as

24  required by generally accepted law enforcement standards and training."  SAC ¶ 90.  They

25  add that Defendants' failure to investigate and report the abuse "increased the risk of harm

26  to Kayleigh."  Id.  Although there is no dispute as to the second and third elements of the

27  state-created danger exception (i.e., known or obvious danger and deliberate indifference),

28  the Court finds that Plaintiffs have not pled facts showing that the Defendants engaged in

1 | *affirmative action that increased the risk of harm* to Kayleigh.  See DeShaney, 489 U.S. at

2 | 201 ("While the State may have been aware of the dangers that Joshua faced in the free

3 | world, it played no part in their creation, nor did it do anything to render him any more

4 | vulnerable to them."); Kennedy v. City of Ridgefield, 439 F.3d 1055, 1062 (9th Cir. 2006)

5 | (noting that a failure to protect claim is actionable only where the official "affirmatively

6 | created an actual, particularized danger [the victim] would not otherwise have faced . . . .").

7 | Defendants' inaction, without more, does not give rise to a claim for a violation of

8 | substantive due process.  Because further amendment to this claim appears futile, this claim

9 | is dismissed without further leave to amend.[5]

10 | ### 2.    Procedural Due Process

11 | The procedural due process component of the Fourteenth Amendment protects

12 | individuals against the deprivation of liberty or property by the government without due

13 | process.  Portman v. Cty. of Santa Clara, 995 F.2d 898, 904 (9th Cir. 1993).  Protected

14 | liberty interests may arise either from the Due Process Clause itself or from statutory or

15 | regulatory provisions.  Hewitt. v. Helms, 459 U.S. 460, 466 (1983), overruled on other

16 | grounds by Sandin v. Conner, 515 U.S. 472 (1995).  "State law can create a right that the

17 | Due Process Clause will protect only if the state law contains '(1) substantive predicates

18 | governing official decisionmaking, and (2) explicitly mandatory language specifying the

19 | outcome that must be reached if the substantive predicates have been met.'"  James v.

20 | Rowlands, 606 F.3d 646, 656 (9th Cir. 2010) (quoting Bonin v. Calderon, 59 F.3d 815, 842

21 | (9th Cir. 1995)).

22 | ### a)    Substantive Predicates to Decisionmaking

23 | Plaintiffs allege that their protected property interest arises principally from the

24 | mandatory child abuse reporting requirements set forth in the California Child Abuse and

25 | Neglect Reporting Act ("CANRA"), Cal. Pen. Code §§ 11164-11174.4.  SAC ¶¶ 89, 90,

26 |

27 | [5] Certainly, should Plaintiffs uncover new facts to support this claim during the
course of discovery, this Order does not foreclose them from pursuing such a claim in the
28 | event they refile this action in state court.

95.[6]  Under CANRA, a mandated reporter[7] who, in the scope of his or her employment or professional capacity, knows about or observes a child that he or she reasonably suspects is a victim of child abuse or neglect, must report the abuse to the county welfare department or any police or sheriff's department or other statutorily designated agency.  Cal. Pen. Code §§ 11166(a), 11165.9.  Section 11166(a) requires an initial report by telephone and the submission of a written, follow-up report.  Id. § 11166(a).  Separate from the duties imposed on a mandatory reporter, subsection (k) requires that a law enforcement agency in receipt of a report of suspected child abuse or neglect to make a cross-report to the county welfare or probation department as soon as possible.  Id. § 11166(k).  The duty imposed by § 11166(k) is independent of the reporting duties under § 11166(a).  B.H. v. Cty. of San Bernardino, 62 Cal.4th 168, 185 (2015).

In their prior motion to dismiss, Defendants argued that CANRA only creates discretionary—as opposed to mandatory—duties, and therefore, fails to provide any "substantive predicates to decision-making."  Dkt. 23 at 13.  The Court disagreed, finding that the plain language of the statute made it clear that such duties were mandatory.  In the course of its analysis, the Court cited Alejo v. City of Alhambra, 75 Cal.App.4th 1180, 1186-88 (1999), which held that, pursuant to § 11166(a), law enforcement officers who receive a report of child abuse have: (1) an implied duty to investigate and (2) an express duty to take further action when an objectively reasonable person in the same situation would suspect child abuse.  Dkt. 45 at 10.  The Court nonetheless dismissed Plaintiffs' procedural due process claim on the ground that the pleadings failed to demonstrate the second requirement; to wit, that CANRA and the other cited statutes and regulations

---

[6] The SAC alleges:  "Among other sources, these rights under the First and Fourteenth Amendments derive from statutory mandates as created by California law.  Investigation and/or reporting of child abuse and/or neglect is mandatory under the California Child Abuse and Neglect Reporting Act, Penal Code § 11164 et seq., Welfare and Institutions Code §§ 10550, 10553, 10554, and 10651, and is intended by law for the benefit and protection of children such as Kayleigh Slusher."  SAC ¶ 90.

[7] A "mandated reporter" is defined to include a police officer, see Cal. Pen. Code § 11165.7(16), and a social worker, see id. § 11165.7(15).

contain mandatory language specifying the particular outcome that must be reached if the substantive predicates have been met.  Id. at 9-13.

In the instant motions, Defendants contend that the Court's analysis of CANRA is no longer valid in light of the California Supreme Court subsequent ruling in B.H.  In that case, a private citizen called a 911 operator to report an incident of suspected child abuse during the child's visit with his father.  The dispatcher relayed the report to the county Sheriff's Department, which, in turn, dispatched a deputy to the child's home to investigate the matter.  Three days later, the deputy prepared a report in which she noted there was an ongoing custody dispute between the child's parents and that such information should be noted for the file.  Weeks later, the child suffered serious, traumatic head injuries inflicted by his father.  The child's mother, as his guardian ad litem, sued the county and the deputy for failing to comply with their duties under § 11166(a) and (k).  The trial court and court of appeal ruled that the deputy and the Sheriff's Department had no duty to cross-report the information from the 911 call or report the results of the deputy's investigation.

The California Supreme Court considered two issues on review:  "(1) whether CANRA imposed a mandatory duty on the Sheriff's Department to cross-report the child abuse allegations to the relevant child welfare agency when it received the 911 report and (2) whether CANRA imposed a mandatory duty on the investigating deputy sheriff to report the child abuse allegations and her investigative findings to the relevant child welfare agency despite her conclusion of no child abuse."  B.H., 62 Cal.4th at 174.  As to the first issue, the court held that, upon receiving the 911 report, the Sheriff's Department had a mandatory and ministerial duty under § 11166(k) to cross-report the child abuse allegations to the county child welfare agency, and that the failure to cross-report could support a finding of breach of a mandatory duty.  Id. at 183-86.  The court explained that, in enacting CANRA, "the Legislature intended that the various law enforcement and child welfare agencies immediately communicate to each other information received on alleged child abuse or neglect so that they may in turn coordinate their investigative procedures."  Id. at 185.

With regard to the second issue, the court concluded that the deputy had no duty under § 11166(a) to report the results of her investigation because she was merely investigating a report of child abuse, and was not acting as a mandatory reporter who had become aware of the abuse in the first instance. The court noted that under its plain terms, § 11166(a) "only requires *mandated reporters* to make reports if the reporter, in his or her professional capacity or within the scope of his or her employment, knows or reasonably suspects child abuse or neglect." Id. at 188 (emphasis added).

In circumscribing the obligations imposed under § 11166(a), the supreme court disagreed with the Alejo court's determination that § 11166(a) imposes mandatory duties on law enforcement officers who have received a report of child abuse.[8] The court explained that Alejo "conflates an officer's mandatory reporting duties with those of an officer investigating a reported instance of alleged child abuse or neglect. It failed to recognize that there is 'a dichotomy between reporter and reportee, i.e., . . . those who make the initial report and the officials who come later' in performing their investigatory or prosecutorial functions." Id. In the court's view, § 11166(a) is aimed specifically at defined *mandatory reporters*, who are obligated to report suspected child abuse when a reasonable person would suspect abuse. Id. at 193. That reporting obligation, however, does not extend to a *reportee*—i.e., a person, such as the deputy, who merely *received a third party report of abuse* and was conducting an investigation based on information reported to her. The court did note, however, that a reportee would, in some circumstances, have a reporting obligation if he or she observed abuse that was not contained in the original report. For instance, the deputy "would have been required to report were she dispatched to investigate a report of a suspected incident of child abuse and observed evidence that would sustain an objective suspicion that a different, previously unreported incident or instance of child abuse had occurred." Id. at 197.

---

[8] The court did not, as City Defendants suggest, completely overrule Alejo. See B.H., 62 Cal.4th at 188 n.6. Rather, B.H. only rejects the Alejo court's interpretation of the duties imposed upon a law enforcement official who is investigating a report of child abuse.

According to City Defendants, <u>B.H.</u> vitiates any claim by Plaintiffs that they had a mandatory duty to do anything in response to Robin's reports of suspected abuse.  Dkt. 87 at 14.  This contention lacks merit.  The SAC alleges that on January 23, 2014, it was reported to the NPD and Officer Wade that Kayleigh was in immediate physical danger due to Krueger and Warner's failure to provide her with food, drug users coming in and out of the house at all hours, and the possibility of her being subjected to physical violence.  SAC ¶¶ 38-40.  Despite this information, Officer Wade, as a mandatory reporter, did not cross-report this information to CWS or otherwise undertake any other action.  <u>Id.</u> ¶¶ 41-42.  In failing to do so, the facts alleged are sufficient to demonstrate that Officer Wade violated his mandatory and ministerial duty under § 11166(k) to cross-report to the county child welfare agency.  <u>B.H.</u>, 62 Cal.4th at 1181 ("Section 11166, subdivision (k) imposes an obligatory duty, and not merely a discretionary or permissive authorization, upon law enforcement agencies to cross-report the child abuse or neglect reports that it receives.").

Similarly, on January 29, 2014, Robin again contacted the NPD and Officer Wade to report that Kayleigh was in imminent physical danger due to illegal drug use in her home, lack of food and care, and potential physical violence.  SAC ¶ 66.  Neither cross-reported this information, as required by CANRA.  <u>Id.</u> ¶ 74.  Upon visiting the apartment where Kayleigh resided, Officers Wade and Deguilio observed indicia of long-term physical abuse.  Kayleigh appeared gaunt, sick, had multiple and severe contusions (including a 4-inch bruise on her forehead and another bruise on her temple).  They also saw her vomit as a result of infectious peritonitis and necrotic small intestine.  <u>Id.</u> ¶ 67.  Construing the facts in a light most favorable to Plaintiffs, a trier-of-fact could reasonably conclude that the officers had observed that a "different, previously unreported incident or instance of child abuse had occurred," thereby triggering their mandatory reporting obligation under

1 CANRA.  See B.H., 62 Cal.4th at 197.[9]  The Court therefore finds that Plaintiffs have

2 sufficiently alleged the existence of substantive predicates governing official

3 decisionmaking.

4 <b>b)      Mandatory Language Specifying the Outcome</b>

5 The second aspect of a procedural due process claim requires Plaintiffs to

6 demonstrate the existence of "explicitly mandatory language specifying the outcome that

7 must be reached if the substantive predicates have been met."  James, 606 F.3d at 656.

8 Here, Plaintiffs contend that if Defendants had complied with their mandatory duties to

9 report and investigate Robin's reports of child abuse, Kayleigh would have been taken into

10 protective custody and received emergency medical treatment.  Dkt. 110 at 16; see SAC

11 ¶ 83.  In particular, they point to language in CANRA stating that "all persons"

12 investigating child abuse "shall consider the needs of the child victim and *shall do whatever*

13 *is necessary* to prevent psychological harm to the child victim."  Cal. Pen. Code § 11164(b)

14 (emphasis added).  They also cite Welfare and Institutions Code §§ 16501(f) and 16504(a),

15 which require that county welfare agencies "respond to any report of imminent danger to a

16 child immediately" and to conduct an "immediate in-person response . . . in emergency

17 situations," respectively.

18 While the aforementioned provisions clearly impose specific duties on law

19 enforcement officials and county welfare workers, they do not contain any "explicitly

20 mandatory language" *requiring* the immediate removal of a child—or any other particular

21 action—in every case where child abuse is suspected.  Rather, the statutes merely articulate

22 the procedure for evaluating, reporting and investigating claims of abuse; they do not

23 

24 [9] City Defendants argue the officers' failure to cross-report Robin's complaints would have made no difference in terms of protecting Kayleigh from her mother and
25 boyfriend, since CWS already knew about those complaints and decided to take no action. The flaw in that argument is that it overlooks Plaintiffs' allegations regarding Officers
26 Wade and Deguilo's visit to Kayleigh's home on January 29, 2014.  At that time, the officers observed clear signs that Kayleigh had been beaten and was malnourished and
27 seriously ill.  The officers did not report this new, previously unknown information to CWS.  Thus, irrespective of Robin's prior reports, the officers' observations triggered their
28 duty to cross-report their findings.

1    contain any "explicitly mandatory language specifying the outcome that must be reached"

2    upon the discharge of those procedural duties.  See James, 606 F.3d at 656.  Rather,

3    California law provides that the ultimate decision as to what course of action to undertake

4    following a report and investigation of suspected child abuse is highly discretionary and is

5    not governed by objective and defined criteria.  See Jacqueline T. v. Alameda Cty. Child

6    Protective Servs., 155 Cal.App.4th 456, 468 (2007); Cal. Wel. & Inst. § 306.  For those

7    reasons, the Court finds that Plaintiffs have failed to establish a right created under state

8    law that is subject to protection under the Due Process Clause.  Kentucky Dep't of Corr. v.

9    Thompson, 490 U.S. 454, 464 (1989) (no viable due process claim established where the

10   "regulations at issue . . . stop short of requiring that a particular result is to be reached upon

11   a finding that the substantive predicates are met.").[10]  Because further amendment to this

12   claim appears futile, Plaintiffs' procedural due process claim is dismissed without further

13   leave to amend.

14              **3.    Interference with Familial Relations**

15          A claim for interference with familial relations may be grounded on the First or the

16   Fourteenth Amendment.  See Lee v. City of Los Angeles, 250 F.3d 668, 685 (9th Cir.

17   2001).  Plaintiffs state that "[they] do not contest that the applicable liability standard for a

18   familial association claim under either the First or Fourteenth Amendment is the same as

19   for the underlying claim."  Dkt. 109 at 20.[11]  In view of the Court's determination that

20

21

22          [10] Plaintiffs' reliance on Lyles v. City of Huntington Park, No. CV 16-3223-GW
     (KSx) (C.D. Cal. Jul. 7, 2016) is misplaced.  See Haddad Decl. Ex. A, Dkt. 111.  In Lyles,
23   the district court found, as the Court does here, that the California Penal Code imposes the
     sufficient mandatory requirements for purposes of establishing a procedural due process
24   claim.  The decision, however, does not reach the dispositive issue in this case, which is
     whether those statutes recite an explicit, mandatory outcome upon discharge of those
25   duties.

26          [11] Plaintiffs erroneously contend that the applicable standard is "failure to take
     objectively reasonable measures in response to a serious risk of harm."  Id. (citing Castro v.
27   Cty. of L.A., 833 F.3d 1060, 1072, (9th Cir. 2016) (en banc)).  Castro involved the legal
     standard applicable to claims by pretrial detainees for failure to protect from assault while
28   in custody, and is inapposite to this case.

1  Plaintiffs have failed to state any cognizable underlying due process claims, their claim for

2  interference with familial association is dismissed without further leave to amend.

3          **B.    MONELL LIABILITY**

4          In the absence of an underlying constitutional violation, Count Two of the SAC for

5  Monell liability similarly fails.  See Simmons v. Navajo Cty., 609 F.3d 1011, 1021 (9th Cir.

6  2010) ("[W]e hold that where there was no underlying constitutional violation, the

7  [plaintiffs] cannot maintain a claim for municipal liability.").  The Court therefore

8  dismisses said claim without further leave to amend.

9          **C.    SUPPLEMENTAL JURISDICTION**

10         Plaintiffs' remaining claims for violation of the Bane Act and for

11 negligence/negligence per se are based upon California state law.  A district court may

12 decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has

13 original jurisdiction.  28 U.S.C. § 1367(c)(3); Sanford v. MemberWorks, Inc., 625 F.3d

14 550, 561 (9th Cir. 2010).  "'[I]n the usual case in which all federal-law claims are

15 eliminated before trial, the balance of factors to be considered under the pendent

16 jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point

17 toward declining to exercise jurisdiction over the remaining state-law claims.'"  Sanford,

18 625 F.3d at 561 (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988),

19 superseded on other grounds by statute as recognized in Fent v. Okla. Water Res. Bd., 235

20 F.3d 553, 557 (10th Cir. 2000)).  Having now dismissed all federal claims alleged against

21 Defendants, the Court declines to assert supplemental jurisdiction over Plaintiffs'

22 remaining claims.  See City of Colton v. Am. Promotional Events, Inc.-West, 614 F.3d 998,

23 1008 (9th Cir. 2010) (holding that district court acted within its discretion in declining to

24 exercise supplemental jurisdiction after granting summary judgment on all federal claims);

25 see also Harrell v. 20th Century Ins. Co., 934 F.2d 203, 205 (9th Cir. 1991) ("it is generally

26 preferable for a district court to remand remaining pendant claims to state court . . . .").

27         Plaintiffs request that the Court exercise supplemental jurisdiction over their state

28 law claims so that they may appeal the dismissal of the federal claims.  Dkt. 109 at 22.

1    Under Rule 54(b), Plaintiffs cannot separately appeal the dismissal of their federal claims

2    unless the Court permits the entry of judgment on less than all of the claims.  Fed. R. Civ.

3    P. 54(b).  However, this case is not suited for certification under Rule 54(b), as the state law

4    claims are based on the same set of facts underlying the federal claims.  See Wood v. GCC

5    Bend, LLC, 422 F.3d 873, 882 (9th Cir. 2005) (reversing Rule 54(b) certification where the

6    dismissed claims were largely based on the same set of facts as the remaining claims);

7    Morrison-Knudsen Co. v. Archer, 655 F.2d 962, 965 (9th Cir. 1981) ("A similarity of legal

8    or factual issues will weigh heavily against entry of judgment under [Rule 54(b)]").

9    Declining to assert supplemental jurisdiction over the state law claims will, however,

10   facilitate Plaintiffs' ability to refile them in state court while simultaneously allowing them

11   to pursue an appeal before the Ninth Circuit.

12   **IV.    <u>CONCLUSION</u>**

13          The horrific murder of Kayleigh likely could have been prevented had the police

14   officers and social workers involved in this case performed their jobs with any semblance

15   of competence.  Robin's numerous reports were all but ignored, with tragic consequences.

16   Nonetheless, binding case law requires this Court to dismiss the federal claims alleged in

17   this action.  Accordingly,

18          IT IS HEREBY ORDERED THAT:

19          1.     Defendants' motions to dismiss are GRANTED with respect to Plaintiffs'

20   federal claims, as set forth above, which are dismissed without further leave to amend.

21          2.     The Court declines to assert supplemental jurisdiction over the remaining

22   state law claims for violation of the Bane Act and negligence/negligence per se.  Plaintiffs

23   may re-file these claims in state court.  Pursuant to 28 U.S.C. § 1367(d), the statute of

24   limitations with respect to these claims shall be tolled during the time period that this suit

25   has been pending and for thirty (30) days following entry of this Order, unless California

26   law provides for a longer tolling period.  Defendants' motions to dismiss Plaintiff's state

27   law claims therefore are DENIED as moot.

28

1       3.      The Clerk shall close the file and terminate any pending matters.

2       IT IS SO ORDERED.

3    Dated:  12/07/16

4                                                    SAUNDRA BROWN ARMSTRONG
                                                     Senior United States District Judge
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28